[No. H034059. Sixth Dist. Nov. 9, 2010.]

YVONNE WONG, Plaintiff and Respondent, v.
TAI JING et al., Defendants and Appellants.

COUNSEL

California Anti-SLAPP Project, Mark Goldowitz and Paul Clifford for Defendants and Appellants.

Law Offices of Marc L. Terbeek, Marc L. Terbeek and John E. Terbeek for Plaintiff and Respondent.

OPINION

**RUSHING, P. J.—**

## I. STATEMENT OF THE CASE

Plaintiff Yvonne Wong (Wong), a pediatric dentist, filed an action against defendants Tai Jing (Jing), his wife Jia Ma (Ma), and the Web site Yelp.com (Yelp) based on allegedly false assertions contained in a review posted on Yelp that criticized the dental services Wong had provided to Jing and Ma's young son. Defendants responded by filing an anti-SLAPP motion under Code of Civil Procedure section 425.16 to strike Wong's claims.[1] The trial court denied the motion, and defendants now appeal from that order. (§ 425.16, subd. (i).)

We reverse.

## II. ANTI-SLAPP MOTION PROCEDURE

Section 425.16 is called the anti-SLAPP statute because it allows a defendant to gain early dismissal of causes of action that are designed primarily to chill the exercise of First Amendment rights. (*Siam v. Kizilbash* (2005) 130 Cal.App.4th 1563, 1568 [31 Cal.Rptr.3d 368]; *Simmons v. Allstate Ins. Co.* (2001) 92 Cal.App.4th 1068, 1069–1070 [112 Cal.Rptr.2d 397].) In pertinent part, the statute provides, "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike . . . ." (§ 425.16, subd. (b)(1).)

Acts " 'in furtherance of' " these rights include "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral

---

[1] "SLAPP is an acronym for strategic lawsuit against public participation." (*Balzaga v. Fox News Network, LLC* (2009) 173 Cal.App.4th 1325, 1329, fn. 3 [93 Cal.Rptr.3d 782].)

All further unspecified statutory references are to the Code of Civil Procedure.

statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) *any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest*; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e), italics added.)

■ In ruling on an anti-SLAPP motion, the trial court engages in a two-step process. "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute. [Citation.] If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 [124 Cal.Rptr.2d 507, 52 P.3d 685] (*Equilon*); accord, *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 733 [3 Cal.Rptr.3d 636, 74 P.3d 737].) Both the defendant moving party and the plaintiff must make a prima facie showing to satisfy their respective burdens. (*Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628, 646 [49 Cal.Rptr.2d 620], disapproved on another point in *Equilon, supra*, 29 Cal.4th at p. 68, fn. 5.) Only when a defendant shows that a cause of action is based on protected conduct and the plaintiff fails to show a likelihood of success on that claim is it subject to dismissal. (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 192 [25 Cal.Rptr.3d 298, 106 P.3d 958]; see *Navellier v. Sletten* (2002) 29 Cal.4th 82, 88–89 [124 Cal.Rptr.2d 530, 52 P.3d 703] [cause of action must arise from protected speech or petitioning and lack even minimal merit].)

### III. THE PLEADINGS AND THE ANTI-SLAPP MOTION

### A. *The Complaint*

In her complaint, Wong asserted causes of action for libel per se and intentional and negligent infliction of emotional distress.[2] In support of those claims, Wong alleged that in 2006, she filled a cavity in Jing and Ma's son's

---

[2] Wong also purported to assert a cause of action for "specific performance/injunctive relief." However, specific performance and injunctive relief are equitable remedies and not causes of action for injuries. (See 4 Witkin, Cal. Procedure (5th ed. 2008) Pleading, §§ 40–41, pp. 105–107; e.g., *Roberts v. Los Angeles County Bar Assn.* (2003) 105 Cal.App.4th 604, 618

tooth, and before doing so, she advised them that the silver amalgam contained mercury, and Ma acknowledged this information. Wong further alleged that in 2008, after examining the boy again, she discovered cavities on the right side of his mouth and scheduled another appointment because she thought he might have a few more cavities. However, Jing and Ma consulted a different dentist. Wong alleged that, Jing and Ma published "slanderous complaints" about her on Web sites, including Yelp, complaining that Wong had not warned them about the mercury, had misdiagnosed their son's case, and had improperly used a general anesthetic "that is outside her scope of practice" and for which she could "lose her license." Wong alleged that Jing, Ma, and Yelp knew that the statements on the Web site were false and had no legal excuse for making them.

Wong attached a copy of the Yelp review. It read as follows: "1 star rating . . . . [¶] Let me first say I wish there is [*sic*] '0' star in Yelp rating. Avoid her like a disease! [¶] My son went there for two years. She treated two cavities plus the usual cleaning. She was fast, I mean really fast. I won't necessarily say that is a bad thing, but my son was light headed for several hours after the filling. So we decided to try another dentist after half a year. [¶] I wish I had gone there earlier. First the new dentist discovered seven cavities. All right all of those appeared during the last half a year. Second, he would never use the laughing gas on kids, which was the cause for my son's dizziness. To apply laughing gas is the easiest to the dentist. There is no waiting, no needles. But it is general anesthetic, not local. And general anesthetic harms a kid's nerve system. Heck, it harms mine too. Third, the filling Yvonne Wong used is metallic silver color. The new dentist would only use the newer, white color filling. Why does the color matter? Here is the part that made me really, really angry. The color tells the material being used. The metallic filing, called silver amalgams [*sic*], has a small trace of mercury in it. The newer composite filling, while costing the dentist more, does not. In addition, it uses a newer technology to embed fluoride to clean the teeth for you. [¶] I regret ever going to her office. [¶] P.S. Just want to add one more thing. Dr. Chui, who shares the same office with Yvonne Wong is actually decent."

### B. *The Anti-SLAPP Motion, Opposition, and Reply*

In their anti-SLAPP motion, defendants claimed that posting the review was protected conduct because the review concerned an issue of public

---

[129 Cal.Rptr.2d 546].) The anti-SLAPP statute applies only to a "cause of action." (§ 425.16, subd. (b)(1).) Thus, for purposes of analysis, we focus on the claims for defamation and infliction of emotional distress.

interest and was made in a public forum. They further claimed that Wong could not show a probability of success on her claims.

Defendants submitted, among other things, copies of various Web site pages to show that the Internet is an important source of public information about oral hygiene, dentists, and dentistry. Defendants also submitted Web site pages concerning the use of silver amalgam to fill cavities and whether it is safe because it contains mercury.

In opposing the motion, Wong claimed that posting the review was not protected conduct. She argued that the review reflected only "a dispute between private parties about the manner in which private services were rendered." Wong further argued that she would probably succeed on her claims.

In her declaration, Wong stated that in 2006, she advised Jing and Ma that their son needed a filing, advised them that she would use silver amalgam containing mercury, provided a data sheet concerning the use of amalgam, and obtained written consent. Thereafter, she conducted the procedure using nitrous oxide because the boy resisted needles. Ma orally consented and watched the procedure. Wong stated that the boy exhibited no ill effects from the gas, and his parents never complained about its use. According to Wong, nitrous oxide is an analgesic, not a general anesthetic; and the use of both the gas and amalgam are approved by the American Dental Association (ADA).

Wong further declared that in April 2008, Jing and Ma cancelled a scheduled appointment without sufficient notice and were charged for it. In May, she took X-rays of the boy, found cavities, and recommended fillings and additional X-rays. Jing and Ma asked for a Saturday appointment, but she declined because she reserves that day for simpler procedures due to staffing difficulties. When Jing and Ma complained, Wong waived the missed-appointment fee. Nevertheless, Jing and Ma terminated her service, demanded dental files, and went to another dentist. Thereafter, Jing and Ma posted their negative review.

Wong said that she asked Yelp to delete the review because it was libelous. Yelp advised her to buy a business account so she could manage the content of her listing. When she declined and asked again for the deletion, Yelp claimed immunity for the review and advised her she needed a court order. In response, Wong filed her lawsuit.

In addition to her declaration, Wong submitted documentary information, including the fact sheet and consent forms acknowledged by Ma concerning the use of amalgam, copies of pages from the ADA Web site, an article from

its journal, and reference articles from the American Academy of Pediatric Dentistry concerning the safety of amalgam and the pediatric use of nitrous oxide.

Wong also submitted the declaration of Bernard Eisenga, M.D., Ph.D., who opined that when properly applied, silver amalgam is not hazardous to a patient's health. He opined that when properly used in dentistry, nitrous oxide is not a general anesthetic and does not cause harm to the nervous system. He further explained that from a safety point of view, where the use of the gas is limited to short periods of 10 to 20 minutes, it is better to use nitrous oxide than needle-injected medication on children who are resistant to or afraid of needles.

In reply, defendants submitted the declarations of Jing and Ma. Jing stated that he wrote and posted the review on Yelp without Ma's knowledge. Jing further stated that after his son's cavity was filled in 2006, his son was pale and vomited and felt light-headed for hours. In 2008, after learning from Wong that his son had more cavities and being concerned about the boy's reaction to the nitrous oxide, Jing took him to a different dentist, who found several more cavities and filled them with white composite after they discussed the pros and cons of silver amalgam. The new dentist also did not use nitrous oxide. Thereafter, Jing researched the use of silver amalgam and nitrous oxide on the Internet. He then shared his views on both and his experience with Wong with others in his posting.

In her declaration, Ma stated that she did not write or even know about Jing's review before it was posted and did not know about the review until long after it was posted.

The parties filed objections to the declarations and exhibits each had submitted in support of and opposition to the motion. Before the hearing on the motion, Wong voluntarily dismissed Yelp from her lawsuit without prejudice.

## C. *The Trial Court's Ruling*

In denying defendants' motion, the court found that they had shown that Wong's action arose from protected speech—i.e., " 'a writing made in a place open to the public or a public forum in connection with an issue of public interest.' [Citations.]" The court further found, however, that Wong had established a probability of success on the merits by making a prima facie

showing of facts, which, if believed, would support a finding of libel and infliction of emotional distress against all defendants.

Concerning Ma's potential liability in particular, the court acknowledged Jing's and Ma's declarations concerning Ma's noninvolvement but noted that they raised the issue in defendants' reply, and Wong had not had the benefit of discovery to controvert them. Under the circumstances, the court ruled that the declarations did not establish Ma's nonliability. In addition, the court also ruled on the parties' evidentiary objections, overruling all of Wong's objections and sustaining and overruling some of defendants' objections.

## IV. *Yelp's Right to Appeal*

Wong initially challenges Yelp's standing to appeal. She argues that because she voluntarily dismissed Yelp as a defendant in her lawsuit without prejudice, Yelp "has nothing to appeal."

■ Although the "general rule" is that "once a person has been dismissed from an action he is no longer a party and the court lacks jurisdiction to conduct any further proceedings as to him," the rule has exceptions. (*Frank Annino & Sons Construction, Inc. v. McArthur Restaurants, Inc.* (1989) 215 Cal.App.3d 353, 357 [263 Cal.Rptr. 592].) Thus, "[e]ven after a party is dismissed from the action he may still have collateral statutory rights which the court must determine and enforce," including "the right to statutory costs and attorneys fees and the right to notice and hearing on a motion to set aside the dismissal. [Citations.]" (*Ibid.*; accord, *Day v. Collingwood* (2006) 144 Cal.App.4th 1116, 1124 [50 Cal.Rptr.3d 903].)

■ For example, in *Liu v. Moore* (1999) 69 Cal.App.4th 745 [81 Cal.Rptr.2d 807], the defendant Liu filed a cross-complaint against Moore and others, and in response, Moore filed an anti-SLAPP motion. Prior to the hearing, Liu dismissed the cross-complaint as to Moore only without prejudice. Moore then sought attorney fees as authorized by the anti-SLAPP statute. (§ 425.16, subd. (c)(1) ["prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs"].) The trial court denied the motion, reasoning that the dismissal of Moore nullified her anti-SLAPP motion and precluded a finding that she was a prevailing party entitled to fees. (*Liu v. Moore, supra*, 69 Cal.App.4th 69 at p. 749.) Moore appealed from the order, and the court reversed. The court observed that the purpose of the anti-SLAPP statute is "to give relief, including financial relief in the form of attorney's fees and costs, to persons who have been victimized by meritless, retaliatory SLAPP lawsuits because of their

'participation in matters of public significance' [citation]." (*Id.* at p. 750, quoting § 425.16, subd. (a).) The court explained that the trial court's ruling would effectively negate an important part of the relief the Legislature intended to provide to SLAPP defendants, frustrate the purpose of discouraging plaintiffs from filing SLAPP suits, and "prolong both the defendant's predicament and the plaintiff's outrageous behavior." (69 Cal.App.4th at p. 750.) Accordingly, the court held that "a defendant who is voluntarily dismissed, with or without prejudice, after filing [an anti-SLAPP motion], is nevertheless entitled to have the merits of such motion heard as a predicate to a determination of the defendant's motion for attorney's fees and costs . . . ." (*Id.* at p. 751; accord, *Kyle v. Carmon* (1999) 71 Cal.App.4th 901, 917–919 [84 Cal.Rptr.2d 303] [party has absolute right to voluntarily dismiss an action before a § 425.16 motion has been heard, but dismissal does not preclude the trial court from addressing whether the prevailing party should be awarded attorney fees]; *White v. Lieberman* (2002) 103 Cal.App.4th 210, 220 [126 Cal.Rptr.2d 608] [order sustaining demurrer to complaint without leave to amend does not moot concurrently filed special motion to strike; prevailing defendant entitled to award of attorney fees].)

■ Here, Jing, Ma, and Yelp filed a joint anti-SLAPP motion. Although Wong dismissed Yelp before the hearing on the motion, Yelp remained a party to the motion because it would have been entitled to fees had defendants prevailed. Thus, as a party to the motion, Yelp was entitled to appeal from the order denying the motion and seek reversal in order to pursue attorney fees. (See § 425.16, subd. (i) [order granting or denying anti-SLAPP motion is appealable].)

Wong's reliance on *Gray v. Superior Court* (1997) 52 Cal.App.4th 165 [60 Cal.Rptr.2d 428] is misplaced. *Gray* did not involve an anti-SLAPP motion or the issue of whether an anti-SLAPP defendant may appeal the denial of his or her motion even after he or she has been dismissed from the plaintiff's lawsuit. The court in *Gray* held that where there is a preliminary evidentiary hearing in a case, after which a plaintiff voluntarily dismisses a party, that party may still move to vacate the dismissal. Moreover, although the party may not appeal from a voluntary dismissal because it involved a ministerial, rather than judicial, act, the party may seek review of the order in a petition for extraordinary writ. (*Id.* at pp. 170–173.) *Gray* is inapposite and does not suggest that Yelp has "nothing to appeal."

## V. Analysis of the Anti-SLAPP Motion

On appeal, we review the motion de novo and independently determine whether the parties have met their respective burdens. (*Christian Research*

*Institute v. Alnor* (2007) 148 Cal.App.4th 71, 79 [55 Cal.Rptr.3d 600]; *Mann v. Quality Old Time Service, Inc.* (2004) 120 Cal.App.4th 90, 103 [15 Cal.Rptr.3d 215].)

## A. *Defendants' Burden to Show Protected Conduct*

Defendants bore the burden to establish that posting the review was protected conduct. On appeal, Wong does not argue that the court erred in finding that defendants had met that burden. This is understandable.

As noted, the anti-SLAPP statute is designed to protect, among other acts, "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest." (§ 425.16, subd. (e)(3).)

■ It is settled that "Web sites accessible to the public . . . are 'public forums' for purposes of the anti-SLAPP statute." (*Barrett v. Rosenthal* (2006) 40 Cal.4th 33, 41, fn. 4 [51 Cal.Rptr.3d 55, 146 P.3d 510]; see, e.g., *Ampex Corp. v. Cargle* (2005) 128 Cal.App.4th 1569, 1576 [27 Cal.Rptr.3d 863]; [Yahoo! Web site message board qualifies as public forum]; *Vogel v. Felice* (2005) 127 Cal.App.4th 1006, 1010, 1015 [26 Cal.Rptr.3d 350] [Web site listing " ' "Top Ten Dumb Asses" ' "]; *Wilbanks v. Wolk* (2004) 121 Cal.App.4th 883, 897 [17 Cal.Rptr.3d 497] [posting on a consumer watchdog's Web site]; *Bernardo v. Planned Parenthood Federation of America* (2004) 115 Cal.App.4th 322, 358 [9 Cal.Rptr.3d 197] [posting on defendant organization's Web site]; *ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1006 [113 Cal.Rptr.2d 625] [two Web sites qualified as public forums].)

Second, although "not every Web site post involves a public issue" (*D.C. v. R.R.* (2010) 182 Cal.App.4th 1190, 1226 [106 Cal.Rptr.3d 399]), consumer information that goes beyond a particular interaction between the parties and implicates matters of public concern that can affect many people is generally deemed to involve an issue of public interest for purposes of the anti-SLAPP statute. (Compare, e.g., *Carver v. Bonds* (2005) 135 Cal.App.4th 328, 343–344 [37 Cal.Rptr.3d 480] [newspaper article about medical practitioner involved issue of public interest where information would assist others in choosing doctors], *Wilbanks v. Wolk, supra,* 121 Cal.App.4th at p. 898 [statements about insurance broker involved issue of public interest because they constituted a consumer warning to others with similar problems], and *DuPont Merck Pharmaceutical Co. v. Superior Court* (2000) 78 Cal.App.4th 562, 564, 566–567 [92 Cal.Rptr.2d 755] [claim that manufacturer disseminated false

information concerning effectiveness of drug used by many was an issue of public interest] with *Dyer v. Childress* (2007) 147 Cal.App.4th 1273, 1280 [55 Cal.Rptr.3d 544] [false portrayal of real person in a movie not an issue of public interest], *Weinberg v. Feisel* (2003) 110 Cal.App.4th 1122, 1132 [2 Cal.Rptr.3d 385] [published allegation of theft by one token collector against another not an issue of public interest], and *Rivero v. American Federation of State, County and Municipal Employees, AFL-CIO* (2003) 105 Cal.App.4th 913, 924 [130 Cal.Rptr.2d 81] [information published in union newspaper about termination of person who supervised eight people not an issue of public interest].)

Here, the court found, and we agree, that defendants made a prima facie showing that the posted review involved a public issue, namely public concern, discussion, and controversy about the use of silver amalgam because it contains mercury. Wong's own documentary submissions lend further support. The data sheet concerning amalgam that Wong provides to her patients advises that mercury can be harmful and has caused "discussion about the risks of mercury in dental amalgam" and a "diversity of opinion[] . . . regarding the safety of dental amalgams." Wong also submitted an ADA journal article that acknowledges the existence of a controversy concerning the potential adverse health effects of exposure to mercury in amalgam.

Moreover, the posting went beyond parochial issues concerning a private dispute about particular dental appointments. It implicitly dealt with the more general issues of the use of nitrous oxide and silver amalgam, implied that those substances should not be used in treating children, and informed readers that other dentists do not use them. Thus, the review was not just a highly critical opinion of Wong's performance on particular occasions; it was also part of a public discussion and dissemination of information on issues of public interest.[3]

---

[3] Defendants argue that even if statements about nitrous oxide do not relate to an issue of public interest and the review included unprotected statements, Wong's claims were still based, at least in part, on protected conduct—i.e., statements concerning amalgam. Moreover because those protected statements were not merely incidental to Wong's claims but central to them, defendants satisfied their initial burden on the anti-SLAPP motion. (See *Peregrine Funding Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 672 [35 Cal.Rptr.3d 31] [where cause of action alleges protected and unprotected conduct, first prong is met unless protected conduct is merely incidental to the unprotected conduct]; *Fox Searchlight Pictures, Inc. v. Paladino* (2001) 89 Cal.App.4th 294, 308 [106 Cal.Rptr.2d 906] [where cause of action alleged protected conduct, additional allegations of unprotected conduct does not preclude anti-SLAPP protection].)

We agree with defendants' analysis.

### B. *Wong's Burden to Show a Likelihood of Success*

█ To show a likelihood of success, "[t]he plaintiff's showing of facts must consist of evidence that would be admissible at trial." (*Hall v. Time Warner, Inc.* (2007) 153 Cal.App.4th 1337, 1346 [63 Cal.Rptr.3d 798].) The plaintiff may not rely on the allegations in the complaint or assertions in a declaration based on information and belief. (*Evans v. Unkow* (1995) 38 Cal.App.4th 1490, 1496–1498 [45 Cal.Rptr.2d 624]; *Nagel v. Twin Laboratories, Inc.* (2003) 109 Cal.App.4th 39, 45 [134 Cal.Rptr.2d 420].) However, to meet his or her burden, the plaintiff need only make a " 'sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' " (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821 [123 Cal.Rptr.2d 19, 50 P.3d 733].) In evaluating whether the plaintiff has met that burden, the court considers the pleadings and evidentiary submissions of both the plaintiff and the defendant. (*Ibid.*) Where the plaintiff makes a prima facie showing of probable success on the merits, the court should grant the anti-SLAPP motion only if "as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim." (*Ibid.*)

### 1. *Ma's Liability*

Defendants assert that Wong offered no evidence to show that Ma wrote or assisted in writing or posting the review, that Ma knew Jing intended to write a review or had done so, or that Ma was even aware of the review before it was posted. On the contrary, in their declarations, Jing and Ma state that Ma did not know about the review until after it was posted. Given the lack of such evidence, defendants argue that Wong failed to show a probability of success in establishing Ma's liability on any of her claims.

There is no evidence, admissible or otherwise, suggesting that Ma had anything to do with the review and its posting. The posting did not state the name of the person who wrote the review, but it did reveal the person's initials—T.J. Thus, the posting supports an inference that Jing wrote and posted the review. However, it does not similarly support a reasonable inference that Ma had something to do with it. Indeed, the review is written in the first person, which implies that the review was written and posted by one person and reflects only that person's sentiments.

Concerning Ma's potential liability, the court faulted defendants for belatedly raising the issue of Ma's nonliability in their reply memorandum to Wong's opposition and not doing so in their initial moving papers. The court implied that it would be unfair to grant their motion as to Ma based on Jing's

and Ma's declarations, which it was not bound to believe, because Wong had not had the benefit of discovery to learn facts that might show Ma's involvement and liability.

However, in our view, the court's approach was flawed. Defendants had the initial burden to show only that the complaint was based on protected conduct. They did not have to make a preemptive factual showing to negate what Wong might present to satisfy her burden. In other words, contrary to the court's ruling, defendants did not have the initial burden to show Ma's nonliability. Rather, Wong had the burden to present admissible evidence to establish Ma's liability in the first place. She failed to do so.[4]

Thus, because all of the causes of action asserted in the complaint are based on the posting of the review, Wong failed to show probable success on any cause of action against Ma. Accordingly, as to the claims against her, the court erred in denying the anti-SLAPP motion.

## 2. *Defamation*

Before determining whether Wong showed a probability of success on her libel claim, we set forth the general legal principles that govern an action for defamation.

██ The elements of a defamation claim are (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage. (*Taus v. Loftus* (2007) 40 Cal.4th 683, 720 [54 Cal.Rptr.3d 775, 151 P.3d 1185].) Civil Code section 45 provides, "Libel is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation."

██ "Statements that contain such a charge directly, and without the need for explanatory matter, are libelous per se. [Citation.] A statement can also be libelous per se if it contains a charge *by implication* from the language employed by the speaker and a listener could understand the defamatory meaning without the necessity of knowing extrinsic explanatory matter. [Citation.]" (*McGarry v. University of San Diego* (2007) 154 Cal.App.4th 97, 112 [64 Cal.Rptr.3d 467], italics added (*McGarry*); see Civ. Code, § 45a.[5])

---

[4] For this reason, we need not address defendants' claim that the court erred in disregarding Jing's and Ma's declarations. Indeed, given Wong's failure to present any evidence to show Ma's liability, those declarations were unnecessary.

[5] Civil Code section 45a provides, in relevant part, "A libel which is defamatory of the plaintiff without the necessity of explanatory matter, such as an inducement, innuendo or other

■ " 'The sine qua non of recovery for defamation . . . is the existence of falsehood.' [Citation.] Because the statement must contain a provable falsehood, courts distinguish between statements of fact and statements of opinion for purposes of defamation liability. Although statements of fact may be actionable as libel, statements of opinion are constitutionally protected. [Citation.]" (*McGarry, supra,* 154 Cal.App.4th at p. 112.) That does not mean that statements of opinion enjoy blanket protection. (*Ibid.*) On the contrary, where an expression of opinion implies a false assertion of fact, the opinion can constitute actionable defamation. (*Milkovich v. Lorain Journal Co.* (1990) 497 U.S. 1, 18–19 [111 L.Ed.2d 1, 110 S.Ct. 2695].) The critical question is not whether a statement is fact or opinion, but " 'whether a reasonable fact finder could conclude the published statement declares or implies a provably false assertion of fact.' " (*McGarry, supra,* 154 Cal.App.4th at p. 113.)

"To determine whether a statement is actionable fact or nonactionable opinion, courts use a totality of the circumstances test of whether the statement in question communicates or implies a provably false statement of fact. [Citation.] Under the totality of the circumstances test, '[f]irst, the language of the statement is examined. For words to be defamatory, they must be understood in a defamatory sense. . . . [¶] Next, the context in which the statement was made must be considered.' [Citation.]" (*McGarry, supra,* 154 Cal.App.4th at p. 113.)

In her complaint, Wong alleged that the review was libelous per se because it falsely implied the following facts: (1) Wong "had failed to tell [Jing and Ma that their] son's filling contained mercury"; (2) Wong "mis-diagnosed the case"; (3) Wong "used a General Anesthetic." Concerning the last allegation, Wong alleged that the use of a general anesthetic is outside the scope of her practice, and she could lose her license for putting a patient under a general anesthetic.

As noted, Wong specifically alleged that she had, in fact, disclosed to Ma that amalgam contains mercury and that Ma acknowledged the disclosure. Wong alleged that during the last visit, Jing and Ma's child struggled, making it difficult to take X-rays of his teeth. She was able to get pictures of only the right side. She advised Jing and Ma that he had at least two cavities there. She suggested a return visit to X-ray the left side because she suspected the boy had more cavities. Wong further alleged that she does not use general anesthesia, using it is outside the scope of her practice, and she could lose her license for using it.

---

extrinsic fact, is said to be a libel on its face. Defamatory language not libelous on its face is not actionable unless the plaintiff alleges and proves that he has suffered special damage as a proximate result thereof."

On appeal, Wong argues, as she did below, that the review implied that she was negligent and incompetent in failing to warn Jing and Ma that silver amalgam contains mercury and advise them of alternatives; in failing to find the boy's cavities and thereby misdiagnosing him; and in filling the boy's cavities under a general anesthetic and thereby exposing him to an unreasonable risk of harm.

### a. *Failure to Warn and Advise*

The review stated that Wong used a silver-colored material called amalgam to fill the boy's cavities, but later, the new dentist used a different, white-colored filling material. The review explained that color indicates what the filling material contains. The review states that what made Jing "really, really angry" was that silver amalgam contains mercury. The white material used by the new dentist does not contain mercury and is better because it also contains a "fluoride to clean teeth."

A reasonable person could understand Jing's statement that he was "really, really angry" about the fact that silver amalgam contains mercury and his statement that he regretted bringing his son to Wong to mean that mercury is bad and should be avoided and that he did not know that Wong had used amalgam or consent to its use and did not know that there were alternatives that did not contain mercury until later when he brought his son to the new dentist. Furthermore, a reasonable person could well infer that Jing would not have consented to the use of amalgam and would have insisted that Wong use an alternative.

However, Wong submitted evidence showing that before filling the boy's cavities, she provided Ma with an data sheet concerning filling material which not only disclosed that amalgam contains mercury but also revealed an alternative, composite resin filling material and then compared the pros and cons of each. Wong also submitted evidence that Ma acknowledged receiving the sheet and consented to the procedure that Wong ultimately employed. In addition, Wong submitted documentary evidence and the declaration of a dental professional indicating that when properly used, silver amalgam is safe and that within the dental profession there is no genuine controversy about its safety and use.

Given (1) Jing's introductory remarks that Wong deserves a zero rating and should be avoided "like a disease" and that he regretted ever bringing his son to see her, (2) his rage at Wong's use of amalgam because it contains mercury, and (3) Wong's evidence that Jing was advised and consented to the

use of amalgam, a jury reasonably could find that the review falsely implied that Wong had failed to warn and advise about silver amalgam and arguably better alternatives to its use. Moreover, a jury could also find that such a false implication was defamatory, in that it could subject Wong to contempt and cause her to be avoided and thereby injure her professional career as a dentist. (Cf. *Slaughter v. Friedman* (1982) 32 Cal.3d 149 [185 Cal.Rptr. 244, 649 P.2d 886] [letters to dental patients from insurance administrator denying claims for dental procedures it considered unnecessary and for which the dentist was overcharging implied that dentist charged excessive fees and performed unnecessary work supported claim of libel by dentist].)

Defendants argue that the review does not expressly accuse Wong of failing to warn and advise. Indeed, in his declaration, Jing concedes that Ma received the data sheet about filling materials. However, defendants propose a different, more innocent interpretation of the review. They argue that it was not the potential danger from mercury and the lack of warning that amalgam contains mercury that made Jing "really, really angry"; rather, Jing was angry because he did not fully understand that other dentists use arguably safer and better alternatives to amalgam that do not contain mercury until he took his son to another dentist.

First, that the review did not *expressly* state that Wong failed to warn or advise is irrelevant. "A defendant is liable for what is insinuated, as well as for what is stated explicitly. [Citation.]" (*Bates v. Campbell* (1931) 213 Cal. 438, 442 [2 P.2d 383].) Thus, as noted, a writing can be libelous if it implies a false assertion of fact. (*McGarry, supra*, 154 Cal.App.4th at p. 112.) The way the review was written reasonably implies a lack of warning and advice. Moreover, the review does not preclude such an implication by, for example, suggesting that Jing or Ma knew that amalgam contains mercury before Wong used it.

Even if defendants' reading of the review were reasonable, statements can be libelous despite the possibility of an innocent, nondefamatory interpretation. (*MacLeod v. Tribune Publishing Co.* (1959) 52 Cal.2d 536, 548–551 [343 P.2d 36].) However, we find their reading to be strained and it is undermined by the data sheet which discloses that amalgam contains mercury and reveals an alternative resin filling material that does not contain mercury. Finally, the suggestion that Jing was not mad because amalgam contains mercury is particularly unpersuasive in light of defendants' strenuous effort to show that the review involved a public issue concerning the safety issues related to the use of amalgam because it contains mercury.

Citing *Forsher v. Bugliosi* (1980) 26 Cal.3d 792 [163 Cal.Rptr. 628, 608 P.2d 716], defendants argue that Wong could not oppose the anti-SLAPP motion on the ground that the review was libelous *by implication* because the complaint does not expressly allege libel by implication or the facts necessary to draw a defamatory implication.

In *Forsher v. Bugliosi, supra,* 26 Cal.3d 792, the court reaffirmed settled principles. "[T]he definition of libel has been held to include almost any language which, upon its face, has a natural tendency to injure a person's reputation. [Citations.] [¶] In determining whether a statement is libelous we look to what is explicitly stated as well as what insinuation and implication can be reasonably drawn from the communication. [Citation.] 'To constitute a libel it is not necessary that there be a direct and specific allegation of improper conduct, as in a pleading. The charge may be either expressly stated or implied; and in the latter case the implication may be either apparent from the language used, or of such a character as to require the statement and proof of extrinsic facts, (*inducement, colloquium,* and *innuendo*) to show its meaning. In the last case, proper allegations and proofs of the facts necessary to make the meaning of the language apparent will be required.' [Citation.] In this connection the expression used as well as the 'whole scope and apparent object of the writer' must be considered. [Citation.]" (*Id.* at p. 803, original italics.)

Here, the implied, allegedly defamatory accusation that Wong failed to warn or advise can reasonably and readily be inferred directly from the review without additional facts or explanation. Under such circumstances, further pleading and proof was unnecessary. (See Civ. Code, § 45a; fn. 5, *ante.*)

In sum, the review falsely implies that Wong failed to warn and advise, and defendants' showing does not conclusively negate that implication or preclude a finding that it was false and defamatory.

### b. *Misdiagnosis*

The review stated that Wong treated Jing and Ma's son for two years; she worked very fast; and she found only two cavities. However, when Jing and Ma brought their son to another dentist, he discovered seven more cavities. Concerning that discovery, Jing stated, "All right all of those appeared during the last half [of the] year."

Viewed in light of Jing's introductory and closing remarks, a reasonable person could probably understand these statements to be criticism of Wong for working hastily, failing to find all of the cavities that the boy had, and

thereby substantially misdiagnosing or underdiagnosing the condition of the boy's teeth. Jing's statement, quoted above, does not necessarily or unequivocally represent an honest concession that his son's seven cavities developed only after Wong stopped treating him. Rather, given its context and the tone of the entire review, the statement would more reaonsonably be understood as a sarcastic remark implying just the opposite: those seven cavities did *not* just suddenly appear in such a short time after Wong's services were terminated.[6]

In her declaration, Wong stated that in February 2006, she took an X-ray of Jing and Ma's son's teeth, discovered a cavity, and later filled it. Over the next two years, she saw the boy, took additional X-rays, and cleaned his teeth. In April 2008, Jing and Ma cancelled a scheduled appointment without advance notice, and she billed them for it but later waived the fee. In May, she took two X-rays of the boy and found "multiple . . . cavities," and recommended fillings and additional X-rays because the boy had made it difficult to get clear pictures. Jing and Ma sought a weekend appointment, but Wong could not accommodate them because she has limited staff on weekends and reserves that time for simple procedures. Thereafter, Jing and Ma terminated her services and demanded the son's file.

If believed, Wong's statement would refute the implied assertion that she worked so fast that she failed to find several cavities thus had misdiagnosed or underdiagnosed the condition of the boy's teeth. Moreover, a jury reasonably could conclude that such a false implication was defamatory. Defendants' showing does not conclusively negate or preclude such a conclusion.

### c. *Use of General Anesthesia*

The review asserted that laughing gas (nitrous oxide) is a general anesthetic and that it is easy for dentists to use. The review further stated that using a general anesthetic harms a child's nervous system, and Wong's use of the gas had harmed the boy by causing him to be dizzy for hours after the appointment.

Again, given Jing's introductory and closing remarks, especially about how fast Wong worked, a reasonable person would probably infer that Wong put Jing's son under general anesthesia to make her job quicker and easier,

---

[6] In his declaration, Jing stated that he did not know if it was normal for his son to suddenly have so many cavities in a short period of time. For that reason, he wrote the statement as a "disclaimer." He denied that he was accusing Wong of not finding the cavities. Rather, he mentioned the newly discovered cavities "to highlight my concern about the treatment my son would have to go through to fix them, to bring out the messages about nitrous oxide and silver amalgam." Needless to say, Jing's declaration does not conclusively establish the meaning of the statement.

exposed the boy's nervous system to potential injury, and had, in fact, harmed him by causing prolonged dizziness.

However, in her declaration, Wong stated that the use of nitrous oxide has long been approved by the ADA. She explained that she used it for a 10-minute procedure because the boy had exhibited resistance to needles. Moreover, she did so with the oral consent of Ma, who watched the entire procedure. Wong said that she did not observe any negative side effects during or after the procedure, and the boy's parents never complained or even mentioned that he had experienced some problems.

Wong further explained that as applied in dental procedures, nitrous oxide is not considered a general anesthetic because the patient does not lose consciousness; rather it is an analgesic. Moreover, she opined that there is no real controversy over the use of the gas on children when it is used as she uses it, and this is especially so when a child is resistant to the use of needles, which can break and cause harm. Wong submitted additional documentary evidence to this effect.

Wong also submitted the declaration of a dental professional. He stated that when used briefly and sporadically on children to perform dental procedures, nitrous oxide is not a general anesthetic but a "conscious analgesic" akin to the medications injected with needles, and such a brief use of the gas does not harm or pose a risk of harm to their nervous system. He stated that its use in this way is accepted within the dental profession and is, from a medical standpoint, preferable for young children who are resistant to and/or fearful of needles, which can cause physical and emotional trauma. He explained that only the severe and prolonged administration of the gas could conceivably pose a neurological or psychoneurological risk of harm but that situation is distinguishable from using the gas for 10 to 20 minutes to perform a dental procedure.

Given Wong's evidence, a jury reasonably could find that the implied assertion that to make her job easier and quicker, Wong put defendant's son under general anesthesia to fill his cavities, exposed the boy's nervous system to potential harm and harmed him was false and defamatory. Again, defendants' showing does not conclusively negate or preclude such findings.

### d. *Conclusion*

Our discussion of Wong's burden leads us to find that she made a prima facie showing of probable success on her cause of action for libel. Thus, the court properly denied the anti-SLAPP motion as it applied to that claim.

### 3. *Claims for Infliction of Emotional Distress*

#### a. *Intentional Infliction*

■ The elements of a cause of action for intentional infliction of emotional distress are: " '(1) outrageous conduct by the defendant, (2) intention to cause or reckless disregard of the probability of causing emotional distress, (3) severe emotional suffering and (4) actual and proximate causation of the emotional distress.' " (*Agarwal v. Johnson* (1979) 25 Cal.3d 932, 946 [160 Cal.Rptr. 141, 603 P.2d 58], disapproved on another point in *White v. Ultramar, Inc.* (1999) 21 Cal.4th 563, 574, fn. 4 [88 Cal.Rptr.2d 19, 981 P.2d 944].)

■ Although "emotional distress may consist of any highly unpleasant mental reaction such as fright, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment or worry" (*Fletcher v. Western National Life Ins. Co.* (1970) 10 Cal.App.3d 376, 397 [89 Cal.Rptr. 78] (*Fletcher*)), to make out a claim, the plaintiff must prove that emotional distress was *severe* and not trivial or transient. (*Id.* at pp. 396–397.)

The California Supreme Court has set a "high bar" for what can constitute severe distress. (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1051 [95 Cal.Rptr.3d 636, 209 P.3d 963] (*Hughes*).) "Severe emotional distress means ' "emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it." ' [Citations.]" (*Potter v. Firestone Tire & Rubber Co.* (1993) 6 Cal.4th 965, 1004 [25 Cal.Rptr.2d 550, 863 P.2d 795] (*Potter*), quoting *Girard v. Ball* (1981) 125 Cal.App.3d 772, 787–788 [178 Cal.Rptr. 406], citing *Fletcher, supra*, 10 Cal.App.3d at p. 397; see Rest.2d Torts, § 46, com. j, p. 78.) Moreover, " '[i]t is for *the court* to determine whether on the evidence severe emotional distress can be found; it is for the jury to determine whether, on the evidence, it has in fact existed.' [Citation.]" (*Fletcher, supra*, 10 Cal.App.3d at p. 397, italics added.)

Pertinent here is *Hughes, supra*, 46 Cal.4th 1035. There, the plaintiff sued a trustee for, among other things, intentional infliction of emotional distress, alleging that he made sexually explicit, offensive, and threatening comments, in effect, demanding sex if she wanted her request for funds from the trust to be granted. (*Id.* at p. 1040.) In upholding summary judgment against her, the court concluded that the plaintiff's allegations that "she has suffered discomfort, worry, anxiety, upset stomach, concern, and agitation" as a result of the defendant's conduct "do not comprise ' " 'emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it.' " ' [Citation.]" (*Id.* at p. 1051; compare with

*Saari v. Jongordon Corp.* (1992) 5 Cal.App.4th 797 [7 Cal.Rptr.2d 82] [complete disruption of life and diagnosis of depression]; *Kelly-Zurian v. Wohl Shoe Co.* (1994) 22 Cal.App.4th 397 [27 Cal.Rptr.2d 457] [anxiety, tightness in chest, heart palpitations, panic attacks, depression, insomnia, and diagnosis of posttraumatic stress disorder].)

Wong alleged in her complaint that the posting caused her to suffer "severe emotional damage." However, in her declaration, she stated only that the review "was very emotionally upsetting to me, and has caused me to lose sleep, have stomach upset and generalized anxiety."

This minimal showing does not reflect emotional distress that was any more severe, lasting, or enduring than that shown in connection with the summary judgment motion in *Hughes*, and we reach the same conclusion reached by our Supreme Court. Wong's alleged emotional reaction to being professionally criticized in a Yelp review, however unjustified or defamatory that criticism might have been, does not constitute the sort of severe emotional distress of such lasting and enduring quality that no reasonable person should be expected to endure. (*Potter, supra,* 6 Cal.4th at p. 1004.) This is especially so because Jing later modified the review on Yelp to delete the allegedly defamatory remarks.

### b. *Negligent Infliction*

 A claim of negligent infliction of emotional distress is not an independent tort but the tort of negligence to which the traditional elements of duty, breach of duty, causation, and damages apply. (*Potter, supra,* 6 Cal.4th at p. 984; *Burgess v. Superior Court* (1992) 2 Cal.4th 1064, 1072 [9 Cal.Rptr.2d 615, 831 P.2d 1197]; *Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc.* (1989) 48 Cal.3d 583, 588 [257 Cal.Rptr. 98, 770 P.2d 278].)

In *Molien v. Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916 [167 Cal.Rptr. 831, 616 P.2d 813] (*Molien*), the Supreme Court made it clear that to recover damages for emotional distress on a claim of negligence where there is no accompanying personal, physical injury, the plaintiff must show that the emotional distress was "serious." (*Id.* at pp. 927–930; see *Burgess v. Superior Court, supra,* 2 Cal.4th at p. 1073, fn. 6 ["[t]he requirement that the emotional distress suffered be 'serious' has its origins in *Molien*"]; *Potter, supra,* 6 Cal.4th at p. 999 [emotional distress must be "serious"]; *Thing v. La Chusa* (1989) 48 Cal.3d 644, 668 [257 Cal.Rptr. 865, 771 P.2d 814] ["serious"].)

Moreover, the court explained, " 'serious mental distress may be found where a reasonable man, normally constituted, would be unable to adequately

cope with the mental stress engendered by the circumstances of the case.' [Citation.]" *(Molien, supra,* 27 Cal.3d at p. 928, quoting *Rodrigues v. State* (1970) 52 Haw. 283 [472 P.2d 509, 520].)

In our view, this articulation of "serious emotional distress" is functionally the same as the articulation of "severe emotional distress." Indeed, given the meaning of both phrases, we can perceive no material distinction between them and can conceive of no reason why either would, or should, describe a greater or lesser degree of emotional distress than the other for purposes of establishing a tort claim seeking damages for such an injury.

Accordingly, we again find that Wong's showing does not reflect the sort of serious emotional distress with which a reasonable, normally constituted person would be unable to cope.

### c. *Dismissal*

In sum, we find that Wong failed to make a prima facie showing of probable success on her cause of action for intentional or negligent infliction of emotional distress because the evidence of her response to the posting, if believed, does not constitute "severe" or "serious" emotional distress. Accordingly, the trial court erred in denying the anti-SLAPP motion as it applied to that claim.

### d. *Redundant Claims*

Finally, we make the following observation about Wong's claims for intentional and negligent infliction of emotional distress. They are based on the same alleged conduct as her libel claim. Concerning intentional infliction of emotional distress, Wong alleged that defendants *intentionally made false statements about her and her practice.*[7] Concerning negligent infliction of emotional distress, Wong alleged that defendants breached a duty to not make

---

[7] We doubt that Wong could make out a claim if the review did not contain any false assertions.

To make out a claim for intentional infliction of emotional distress, a plaintiff must prove, among other things, that the defendant's alleged conduct was " 'outrageous,' " which means conduct " 'so extreme and outrageous "as to go beyond all possible bo[u]nds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." ' [Citation.]" *(Coleman v. Republic Indemnity Ins. Co.* (2005) 132 Cal.App.4th 403, 416 [33 Cal.Rptr.3d 744], quoting *Alcorn v. Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 499, fn. 5 [86 Cal.Rptr. 88, 468 P.2d 216]; see *Potter, supra,* 6 Cal.4th 965, 1001.) Although posting a review containing false assertions may constitute extreme and outrageous conduct; posting a negative but otherwise truthful review could hardly be considered atrocious and intolerable conduct that goes beyond the bounds of decency.

false statements about her and her practice.[8] In essence, Wong's infliction of emotional distress claims are merely alternative legal theories for holding defendants liable for the same conduct underlying her libel claim.

Moreover, although these causes of action are designed to protect against injury to one's emotional state, Wong could have recovered only damages for emotional distress. On the other hand, the potential recovery on her libel claim was not so limited. Wong would be entitled to "the amount which will compensate for all the detriment proximately caused" by defamation (Civ. Code, § 3333), that is, she would be entitled to the amount of damages that would make her whole. (*Raven's Cove Townhomes, Inc. v. Knuppe Development Co.* (1981) 114 Cal.App.3d 783, 801 [171 Cal.Rptr. 334] ["[t]he purpose of tort damages is to make the injured plaintiff whole"].) Such compensatory damages would include damages for injury not only to her reputation but damages for emotional distress—i.e., shame, anguish, humiliation, etc. (*Carney v. Santa Cruz Women Against Rape* (1990) 221 Cal.App.3d 1009, 1022 [271 Cal.Rptr. 30]; e.g., *Russell v. Geis* (1967) 251 Cal.App.2d 560 [59 Cal.Rptr. 569] [upholding damages for injury to reputation, inability to gain employment, and emotional distress]; *Gertz v. Robert Welch, Inc.* (1974) 418 U.S. 323, 350 [41 L.Ed.2d 789, 94 S.Ct. 2997].) Moreover, a defendant who proves defamation may also seek punitive damages. (*Lackner v. North* (2006) 135 Cal.App.4th 1188, 1212 [37 Cal.Rptr.3d 863].)

In light of her libel claim, Wong's alternative claims for infliction of emotional distress are redundant. They added nothing of substance to her complaint. They would be no easier to prove. They provided no different factual or legal basis for recovery. And, as noted, potential recovery under them could be less than under her libel claim. Under the circumstances, therefore, the dismissal of those claims amounts to a loss of nothing.

## VI. Disposition

The order denying defendants' anti-SLAPP motion is reversed. The matter is remanded and the court directed to enter a new and different order granting the motion to dismiss all causes of action against Ma; denying the motion to

---

[8] Again, we doubt that Wong could make out a claim if the review did not contain any false assertions. To establish liability for negligence, a plaintiff must prove duty, breach, causation, and damages. (*Ortega v. Kmart Corp.* (2001) 26 Cal.4th 1200, 1205 [114 Cal.Rptr.2d 470, 36 P.3d 11].) Although the laws proscribing defamation may establish a duty not to publish false and injurious statements, we know of no corresponding law proscribing negative but truthful criticism or of any duty imposed by law not to truthfully and publicly criticize others. Obviously, any such law or duty would have difficulty passing muster under the First Amendment.

dismiss Wong's cause of action for libel against Jing; and granting the motion to dismiss the causes of action for intentional and negligent infliction of emotional distress against Jing.

Premo, J., and Elia, J., concurred.