Filed 11/22/19

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| CYNTHIA BRIGANTI, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> KEITH CHOW, <br><br> Defendant and Appellant. | B289046 <br><br> (Los Angeles County Super. Ct. No. BC676243) |

APPEAL from an order of the Superior Court of Los Angeles County, Gail Ruderman Feuer, Judge. Affirmed.

Khouri Law Firm, Michael J. Khouri & Behzad Vahidi for Plaintiff and Respondent.

Law Offices of Jan Stanley Mason, Jan Stanley Mason for Defendant and Appellant.

# INTRODUCTION

Plaintiff and respondent Cynthia Briganti sued defendant and appellant Keith Chow for defamation and intentional interference with prospective economic advantage after Chow posted a comment on Facebook stating, among other things, that Briganti had been indicted, was a convicted criminal, and had stolen the identities of thousands of people. In response, Chow filed a special motion to strike the complaint under Code of Civil Procedure section 425.16[1] (i.e., an anti-SLAPP motion). The trial court granted the motion in part, striking the intentional interference with prospective economic advantage claim but not the defamation claim.

On appeal, Chow contends the trial court erred by denying the portion of his anti-SLAPP motion directed to the defamation claim. We apply well-established law to reject Chow's contention and affirm the trial court's order. We publish to draw attention to our concluding note on civility, sexism, and persuasive brief writing.

## FACTUAL AND PROCEDURAL BACKGROUND

In her complaint, Briganti describes herself as a motivational speaker for an international water distributor. The distributor, Enagic, Inc. dba Kangen Water, sells water-ionization devices. Briganti says she speaks to large audiences about the water distributor to help sell its products. She also alleges she was the executive producer of a movie, "Slamma Jamma," released in theaters in 2017.

---

[1]     All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

Briganti has several mutual Facebook friends with Chow. In January 2017, Chow posted this comment on the Facebook timeline of one of their mutual friends: "CYNTHIA CABUNGCAL BRIGANTI the crooked Filipina Convicted CRIMINAL aka Queen of the SCAM artists stole thousands of innocent victims [sic] identities by parading in sheep [sic] dressing as an angel. But now the whole world knows after her indictment by the U.S. courts that she is nothing but Lucifer the Devil enriching herself at the expense of innocent victims by her multi-level marketing scams. Her latest scam was as Enagic Kangen water machine Queen duping tens of thousands of innocent victims out of their hard earned cash money. Good, our gracious and loving LORD best known as Jesus aka God will always triumph over evil. Believe in the Almighty God and he will protect and help you from CCB the criminal."

As noted above, Briganti sued Chow for defamation and intentional interference with prospective economic advantage, alleging Chow's statements were false and malicious, that they were seen by Enagic's Facebook followers, and they caused several investors to back out of her movie. She further alleges the post caused her movie to be released on a smaller scale and make less money than it would have otherwise.

Chow filed an anti-SLAPP motion, asking the trial court to strike Briganti's complaint in its entirety. He asserted Briganti's claims arose from protected activity and she could not provide evidence demonstrating she would prevail on her claims. Briganti opposed the motion, arguing her complaint does not arise from activity protected under the anti-SLAPP statute and she had shown a probability of success on the merits. She submitted her

own declaration and the declaration of her business partner in support of her opposition.

In a lengthy and detailed ruling, the trial court granted Chow's motion to strike Briganti's intentional interference with prospective economic advantage claim, but declined to strike Briganti's defamation claim. As noted above, Chow contends the trial court erred by not striking Briganti's defamation claim.

## DISCUSSION

We review de novo a trial court's decision on an anti-SLAPP motion. (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788.) The anti-SLAPP statute requires a two-step process: "At the first step, the moving defendant bears the burden of identifying all allegations of protected activity, and the claims for relief supported by them. . . . If the court determines that relief is sought based on allegations arising from activity protected by the statute, the second step is reached. There, the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated. The court, without resolving evidentiary conflicts, must determine whether the plaintiff's showing, if accepted by the trier of fact, would be sufficient to sustain a favorable judgment. If not, the claim is stricken." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 396.) In making these determinations the court considers "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2).)

4

## A. Briganti's Complaint Arose from Protected Activity

The anti-SLAPP statute defines protected activities as: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

We agree with the trial court's conclusion that the comments upon which Briganti bases her claims implicate an issue of public interest, and therefore qualify as a protected activity. As the trial court explained, "Chow's comments describe a widespread pattern of identity theft and multi-level marketing scams, which, he claims, have ensnared 'tens of thousands of innocent victims.' [citation.] [fn. omitted] This alleged mass criminality would be 'of concern to a substantial number of people.' [citation.] This was evidently Chow's hope for the Facebook post, as Briganti has provided additional posts made by Chow in the same Facebook thread in which he exhorts commenters to warn their friends and family of Briganti's conduct in the hopes of building mass awareness. [citation.]"

5

Briganti argues Chow "has failed to produce a single shred of evidence to support his statement that Briganti has stolen thousands of innocent victims' identities." But the inquiry at this stage of the anti-SLAPP analysis is not whether the statements are true, but whether the *allegations* in the complaint are a matter of public interest. We conclude alleged widespread, criminal identity theft is a matter of public interest.

## B. Briganti Met Her Burden to Show a Probability of Prevailing on Her Defamation Claim

At the second anti-SLAPP step, the plaintiff bears the burden of demonstrating a probability of prevailing on each claim arising from protected activity. (*Baral, supra*, 1 Cal.5th at p. 384.) A plaintiff must "demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." (*Matson v. Dvorak* (1995) 40 Cal.App.4th 539, 548.) Under the "'summary-judgment-like procedure'" applicable at this step, the court "does not weigh evidence or resolve conflicting factual claims." (*Baral, supra*, 1 Cal.5th at p. 384.) Chow contends Briganti cannot establish a prima facie claim for defamation because Chow's statements on Facebook constituted "'nonactionable opinion.'" We disagree.

"The elements of a defamation claim are (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a tendency to injure or causes special damage." (*Wong v. Jing* (2010) 189 Cal.App.4th 1354, 1369.) "Libel is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person

6

to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." (Civ. Code, § 45.)

In support of her defamation claim, Briganti submitted the following evidence: (1) the Facebook post at issue, in which Chow states she is a convicted criminal, that she has been indicted, and that she has stolen thousands of individuals' identities; (2) her declaration stating she has never been convicted of, or indicted for, any crime, and she has not stolen thousands of innocent victims' identities[2]; (3) her declaration stating Chow's Facebook post inhibited her ability to raise sufficient marketing funds to fully support the release of the movie she had produced; and (4) a declaration of her business partner stating multiple international investors backed out of investing in the movie because of the damage to Briganti's reputation from Chow's Facebook post.

Chow argues a reasonable reader of his Facebook post would have known the statements were mere "'epithets, fiery rhetoric or hyperbole'" constituting nonactionable opinions as opposed to factual assertions. At this stage of the anti-SLAPP analysis, however, Briganti need only establish her claim has at least "'minimal merit'" (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061.) Briganti is "not required 'to *prove* the specified claim to the trial court;' rather, so as to not deprive the plaintiff of a jury trial, the appropriate inquiry is whether the plaintiff has stated and substantiated a legally sufficient claim." (*Whitehall v. County of San Bernardino* (2017) 17 Cal.App.5th 352, 364.) She has met this burden. (See,

---

[2] Briganti acknowledges Chow sought and obtained a civil judgment against her for fraudulent conduct, but she was never charged with or convicted of a crime.

e.g. *Barnes-Hind, Inc. v. Superior Court* (1986) 181 Cal.App.3d 377, 385 ["Perhaps the clearest example of libel per se is an accusation of crime."]*; ZL Technologies, Inc. v. Does 1-7* (2017) 13 Cal.App.5th 603, 625 [""'[N]ot every word of an allegedly defamatory publication has to be false and defamatory to sustain a libel action . . . . 'The test of libel is not quantitative; a single sentence may be the basis for an action in libel even though buried in a much longer text . . .'"[Citation.]']") Thus, we agree with the trial court's conclusion that Briganti's showing "is adequate to establish a prima facie claim for defamation. The statements complained of – that she had been indicted, that she was a convicted criminal, and that she had stolen the identities of thousands of people – are plainly defamatory in character and would tend to expose their subject 'to hatred, contempt, ridicule, or obloquy.' (*Wong, supra,* 189 Cal.App.4th at p. 1369.)."

Accordingly, Briganti has demonstrated her defamation claim has "at least 'minimal merit'" and therefore, should not be stricken. (*Park v. Board of Trustees of California State University*, *supra*, 2 Cal.5th at p. 1061.)[3]

---

[3]     Chow argued in the court below that his Facebook post is privileged; thus, he asserted, Briganti must prove the statement was made with malice. Chow failed to raise this argument on appeal, however. We therefore treat it as abandoned. (*108 Holdings, Ltd. v. City of Rohnert Park* (2006) 136 Cal.App.4th 186, 193, fn. 3.)

## C. A Note on Civility, Sexism, and Persuasive Brief Writing

Having resolved the merits of this appeal, we would be remiss if we did not also comment on a highly inappropriate assessment of certain personal characteristics of the trial judge, including her appearance, in the opening paragraph of Chow's reply brief. We do so not to punish or embarrass, but to take advantage of a teachable moment.

The offending paragraph states: "Briganti . . . claims that . . . Chow defamed her by claiming she was 'indicted' for criminal conduct, which is the remaining charge [in the case] after the [trial judge] . . . an attractive, hard-working, brilliant, young, politically well-connected judge on a fast track for the California Supreme Court or Federal Bench, ruled for Chow granting his anti-SLAPP Motion to Strike Respondent's Second Cause of Action but against Chow denying his anti-SLAPP Motion against the First Cause of Action . . . . With due respect, every so often, an attractive, hard-working, brilliant, young, politically well-connected judge can err! Let's review the errors!" [Original capitalization preserved.]

When questioned at oral argument, Chow's counsel stated he intended to compliment the trial judge. Nevertheless, we conclude the brief's opening paragraph reflects gender bias and disrespect for the judicial system.

As two of our judicial colleagues noted recently, "[d]espite the record numbers of women graduating from law school and entering the legal profession in recent decades, as well as the increase in women judges and women in leadership positions — not to mention the [#MeToo] movement — women in the legal

profession continue to encounter" discrimination.[4] Unfortunately, "unequal treatment does not cease once a woman joins the judiciary." (*Ibid.*) Calling a woman judge — now an Associate Justice of this court — "attractive," as Chow does twice at the outset of his reply brief, is inappropriate because it is both irrelevant and sexist. This is true whether intended as a compliment or not. Such comments would not likely have been made about a male judge. (*Ibid.*)

As Presiding Justice Edmon and Supervising Judge Jessner observed in their article, gender discrimination is a subcategory of the larger scourge of incivility afflicting law practice. (*Ibid.*) Objectifying or demeaning a member of the profession, especially when based on gender, race, sexual preference, gender identity, or other such characteristics, is uncivil and unacceptable. Moreover, the comments in the brief demean the serious business of this court. We review judgments and judicial rulings, not physical or other supposed personal characteristics of superior court judges.

The California Code of Judicial Ethics compels us to require lawyers in proceedings before us "to refrain from . . . manifesting, by words or conduct, bias, prejudice, or harassment based upon race, sex, gender, gender identity, gender expression, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation . . . ." (Cal. Code Jud. Ethics, canon 3B(6)(a).) That goes for unconscious as well as conscious bias. Moreover, as

---

[4]     (L. Edmon & S. Jessner, Gender Equality is Part of the Civility Issue (Summer 2019) ABTL Report Los Angeles 21, http://www.abtl.org/report/la/abtlla_summer2019.pdf [as of October 28, 2019], archived at <https://perma.cc/2HSM-XQZW>.)

judicial officers, we can and should take steps to help reduce incivility, including gender-based incivility.[5] One method is by calling gendered incivility out for what it is and insisting it not be repeated. In a more extreme case we would be obliged to report the offending lawyer to the California State Bar. (*Martinez v. O'Hara* (2019) 32 Cal.App.5th 853, 854.)

We conclude by extending our thanks to the many talented lawyers whose excellent briefs and scrupulous professionalism make our work product better and our task more enjoyable. Good brief-writing requires hard work, rigorous analysis, and careful attention to detail. Moreover, we recognize "every brief presents opportunities for creativity— for imaginative approaches that will convey the point most effectively."[6] We welcome creativity and do not require perfection. We simply did not find the peculiar style and content of this brief's opening paragraph appropriate, helpful, or persuasive.

---

[5] (See B. Currey & K. Brazille, Seven Things Judges Can Do to Promote Civility Outside the Courtroom (Summer 2019) ABTL Report Los Angeles 11, 12-13, http://www.abtl.org/report/la/abtlla_summer2019.pdf [as of October 28, 2019], archived at ,https://perma.cc/2HSM-XQZW7>.)

[6] (Garner, The Winning Brief 18 (3rd ed. 2014).)

## DISPOSITION

The order is affirmed. Briganti is awarded her costs on appeal.

## CERTIFIED FOR PUBLICATION

CURREY, J.

WE CONCUR:

WILLHITE, Acting P. J.

COLLINS, J.

12