Filed 1/27/22  Kozlova v. Doubson CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| ELENA KOZLOVA, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> NATASHA DOUBSON, <br><br> Defendant and Appellant. | H047759 <br> (Santa Clara County <br> Super. Ct. No. 19CH008777) |

Defendant Natasha Doubson appeals from a November 19, 2019 order denying her special motion to strike the request for civil harassment restraining orders of plaintiff Elena Kozlova under Code of Civil Procedure section 425.16,[1] the anti-SLAPP statute. For the reasons explained below, we agree with Doubson that the trial court erred in denying the entirety of her motion to strike.  We reverse the trial court's order and remand with directions.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This case arises from a contentious psychologist-patient relationship.  From late 2012 until May 2016, Doubson received psychotherapy from Toren Psychological Services, a clinic owned by psychologist Rosalie Toren.  Kozlova provided the

---

[1] Unspecified statutory references are to the Code of Civil Procedure.

psychotherapy services. At the time, Kozlova held a Psychological Assistant Registration[2] from the California Board of Psychology.

On June 3, 2019, Kozlova filed a request for civil harassment restraining orders. She alleged that, starting in July 2016, Doubson had harassed Kozlova, her husband, Chris Grzeszczak, and her former supervisor, Toren. Kozlova also alleged that Doubson: sent direct e-mails to Kozlova, Grzeszczak, and Toren; wrote harassing letters to Kozlova's former attorney; posted disturbing and defamatory reviews on Yelp and Google business listings; filed small claims actions against Kozlova, Grzeszczak, and Toren; created a personal blog where she published false and defamatory statements; submitted complaints to various governmental and non-governmental agencies; wrote to Kozlova's educational institutions; and communicated directly with Kozlova's other patients.

On the same day the request was filed, the trial court issued a temporary restraining order (TRO) against Doubson.

On September 23, 2019, Doubson filed a special motion to strike directed at Kozlova's civil harassment complaint. Doubson argued the harassment cause of action arose primarily from protected activities and Kozlova could not show a probability of prevailing based on the alleged activities.

In opposition, Kozlova contended that the special motion to strike was based only on a small portion of Doubson's conduct, i.e., the protected conduct, and that the protected conduct was not the primary focus of Kozlova's request for a restraining order. Rather, Kozlova argued the main thrust of her action was Doubson's repeated instances of making unprotected defamatory statements and harassing conduct. Further, Kozlova argued that if the court deemed any activity protected, the appropriate relief would be to

_____

[2] A psychological assistant works under the supervision of a licensed psychologist. (Bus. & Prof. Code, § 2913.)

simply eliminate the allegations of protected activity, not to strike the entire cause of action because it could still be supported by unprotected activity.

On November 19, 2019, the trial court issued an order denying Doubson's special motion to strike, and also denying Doubson's related request for attorney fees and costs. The court stated that Kozlova's harassment claim was based on both protected and unprotected activities. It found that the protected conduct could not be disregarded in the first stage of the anti-SLAPP analysis, so the burden shifted to Kozlova to demonstrate a probability of success on the merits. The court concluded that Kozlova met a standard of minimal merit and demonstrated a prima facie case for the harassment claim. Doubson timely appealed the order.

## II.    DISCUSSION

On appeal, Doubson argues the trial court correctly ruled on the first prong of her anti-SLAPP motion, but erred on the second prong by finding Kozlova established a probability of success on her harassment claim. In response, Kozlova contends that notwithstanding any protected activity, there is sufficient unprotected activity to support her civil harassment order.

### A.  Legal Standard for Anti-SLAPP Motion

Section 425.16, "commonly known as the anti-SLAPP statute, allows defendants to request early judicial screening of legal claims targeting free speech or petitioning activities." (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 880-881.) The anti-SLAPP statute defines four categories of protected activity: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of

3

the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

The California Supreme Court has articulated a two-step procedure for litigation of an anti-SLAPP motion. "First, 'the moving defendant bears the burden of establishing that the challenged allegations or claims "aris[e] from" protected activity in which the defendant has engaged.' [Citation.] Second, for each claim that does arise from protected activity, the plaintiff must show the claim has 'at least "minimal merit." ' [Citation.] . . . If the plaintiff cannot make this showing, the court will strike the claim." (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009 (*Bonni*).)

The court has further explained this two-step procedure where a cause of action "rests on allegations of multiple acts, some of which constitute protected activity and some of which do not." (*Bonni*, *supra*, 11 Cal.5th at p. 1010.) First, "the moving defendant bears the burden of identifying all allegations of protected activity, and the claims for relief supported by them. When relief is sought based on allegations of both protected and unprotected activity, the unprotected activity is disregarded at this stage. If the court determines that relief is sought based on allegations arising from activity protected by the statute, the second step is reached. There, the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated. The court, without resolving evidentiary conflicts, must determine whether the plaintiff's showing, if accepted by the trier of fact, would be sufficient to sustain a favorable judgment. If not, the claim is stricken. Allegations of protected activity supporting the stricken claim are eliminated from the complaint, unless they also support a distinct claim on which the plaintiff has shown a probability of prevailing." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 396 (*Baral*).)

Here, the underlying petition before the trial court was a civil harassment petition brought pursuant to section 527.6. Such a petition can be challenged under the anti-SLAPP statute. (*Thomas v. Quintero* (2005) 126 Cal.App.4th 635, 652 (*Thomas*).)

4

"We review de novo the grant or denial of an anti-SLAPP motion." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067.) "We exercise independent judgment in determining whether, based on our own review of the record, the challenged claims arise from protected activity." (*Ibid*.) "In addition to the pleadings, we may consider affidavits concerning the facts upon which liability is based. [Citations.] We do not, however, weigh the evidence, but accept plaintiff's submissions as true and consider only whether any contrary evidence from the defendant establishes its entitlement to prevail as a matter of law." (*Ibid*.)

## B. The First Step[3]

Under the first step of the anti-SLAPP analysis, Doubson, as the moving defendant, bears the burden of identifying all allegations of protected activity, and the claims for relief supported by them. (*Baral*, *supra*, 1 Cal.5th at p. 396.) "In turn, a court should examine whether those acts are protected and supply the basis for any claims. It does not matter that other unprotected acts may also have been alleged within what has been labeled a single cause of action; these are 'disregarded at this stage.' [Citation.] So long as a 'court determines that relief is sought based on allegations arising from activity protected by the statute, the second step is reached' with respect to these claims." (*Bonni*, *supra*, 11 Cal.5th at p. 1010.)

Here, Kozlova's request for a civil harassment restraining order is the only claim we consider. That claim, however, is based on allegations of a variety of activities by Doubson, some of which may be protected and some not. An anti-SLAPP motion can be directed at particular alleged acts giving rise to a claim for relief, so it must be

_____

[3] At the outset, we note that Doubson does not present the first step of the analysis as an issue for this court to resolve. Her statement of the issues only asks whether the trial court erred in concluding there exists a probability of success on the merits (i.e., step two in the analysis). Nevertheless, Doubson discusses the first step in her papers and, as we review the trial court's order de novo, we will also address whether the underlying claim arises from protected activity.

5

determined whether any of the acts giving rise to Kozlova's claim are protected. (See *Baral*, *supra*, 1 Cal.5th at p. 393 ["[A]n anti-SLAPP motion, like a conventional motion to strike, may be used to attack parts of a count as pleaded"].)

Doubson contends Kozlova's request for civil harassment restraining orders is based on a combination of protected and unprotected activities. In this court, she asserts her anti-SLAPP motion identified five protected activities that formed the basis of Kozlova's request for civil harassment restraining orders: (1) complaints Doubson filed with governmental agencies and with the small claims court;[4] (2) a March 2019 Yelp review; (3) communications with Kozlova's patients; (4) sending letters to Kozlova's educational institutions; and (5) sending messages to Kozlova's attorney. In the trial court and in this court, Doubson focuses primarily on her contacts with Kozlova's patients and her Yelp reviews, and contends those activities are protected. Therefore, we will first examine whether those two activities are protected.[5]

## 1. Communications With Kozlova's Patients

In Kozlova's request for civil harassment protective orders she states, among other activities, Doubson sent defamatory communications directly to Kozlova's patients. Doubson asserted in the trial court that the e-mails to patients qualify as protected activity under section 425.16, subdivision (e)(4) as "conduct in furtherance of the exercise of the

---

[4] We grant Doubson's request that we take judicial notice of the complaints filed in small claims case Nos. 19SC078518 and 19SC078520.

[5] Doubson contends Kozlova waived certain "public interest" arguments in connection with the March 2019 Yelp review and e-mails to Kozlova's patients by not raising the arguments in the trial court. It is true that arguments not raised before the trial court can be waived, even on de novo review. (*DiCola v. White Brothers Performance Products, Inc.* (2008) 158 Cal.App.4th 666, 676.) Nevertheless, as discussed further below, we decide the Yelp review and certain contacts with patients are protected conduct.

constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

For example, in an e-mail dated December 26, 2017, to one of Kozlova's patients, Doubson stated Kozlova and Kozlova's husband, Grzeszczak, were "imposters."[6] Doubson's e-mail indicated Kozlova had only been a psychological assistant at the time of group psychotherapy sessions in which Doubson and the other patients participated. Doubson also labeled Grzeszczak an imposter for conducting psychotherapy sessions without any certification or license. Doubson wrote in the e-mail: "While I do not have the time and resources to sue [Kozlova and Grzeszczak] for real, I do want to recover a little bit of money in a small claims court action . . . ." She continued by stating that she is "writing to other group participants to check if anybody would be willing to come to the courthouse in San Jose or provide me with a signed statement evidencing that [Grzeszczak] was co-leading and at times leading the group therapy sessions. I have plenty of email evidence, but still would prefer a witness statement." In conclusion, she asked whether the patient would be willing to be a witness and what dates would be convenient, asserting that a subpoena could be provided so that the witness could miss work.

Kozlova argues the e-mails are not protected because Doubson has failed to provide evidence that litigation was contemplated in good faith and was under serious consideration. She also argues the e-mails are not protected because there was no evidence that they are related to the substantive issues in the litigation and were directed to individuals having some interest in the litigation.

---

[6] The record includes only one example of an e-mail sent to one of Kozlova's group session patients, from December 2017. To the extent this e-mail is the same or substantially similar to the e-mails sent to other group session patients in December 2017, our discussion applies to all of these e-mails. We draw no conclusion as to e-mails sent during a different time period to non-group session patients.

7

In determining whether the e-mails to patients constitute protected activity, *Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255 (*Neville*) is instructive. In *Neville*, an employer fired an employee, alleging the employee had misappropriated customer lists and solicited his employer's customers to start a competing business. (*Id*. at p. 1259.) Several months prior to commencing litigation against the employee, the employer's attorney sent a letter to the employer's customers accusing the employee of breach of contract and misappropriation of trade secrets and suggesting the customers should not do business with the former employee to avoid involvement in upcoming litigation. (*Ibid*.) The employee then filed a defamation action against the former employer. (*Ibid*.) The employee later added the attorney who drafted the employer's letter as a Roe defendant. (*Id*. at p. 1260.)

The attorney moved to strike the cross-complaint pursuant to the anti-SLAPP statute. (*Neville*, *supra*, 160 Cal.App.4th at p. 1260.) At the trial court, the employee provided no evidence regarding the probability of prevailing and the trial court therefore granted the special motion to strike. (*Id*. at p. 1261.) On appeal, the employee argued the attorney "failed to meet his threshold burden of proving that the [l]etter was written 'in connection with an issue under consideration or review by a legislative, executive, or judicial body' as required by section 425.16, subdivision (e)(2)." (*Id*. at p. 1262.)

Ultimately, the court found that "a statement is 'in connection with' litigation under section 425.16, subdivision (e)(2) if it relates to the substantive issues in the litigation and is directed to persons having some interest in the litigation." (*Neville*, *supra*, 160 Cal.App.4th at p. 1266.) Applying this legal standard, the *Neville* court concluded the letter was " 'in connection with' " (*id*. at p. 1268) the issues in the lawsuit because it related directly to the employer's claims for breach of contract and misappropriation of trade secrets against the employee. (*Id*. at pp. 1267-1268.)

Importantly, the court stated that the fact that the letter was sent prior to the initiation of the lawsuit did not preclude it from being considered protected activity.

8

(*Neville*, *supra*, 160 Cal.App.4th at p. 1268.)  For protected status, a statement made pre-litigation must concern the subject of the dispute and be made in anticipation of litigation contemplated in good faith and under serious consideration.  (*Ibid*.)  Further, a statement can be protected even if it is sent to persons "who are not parties or potential parties to litigation, provided such statements are made 'in connection with' pending or anticipated litigation."  (*Id*. at p. 1270.)

In *Healy v. Tuscany Hills Landscape & Recreation Corp.* (2006) 137 Cal.App.4th 1, the court found that a letter sent by a homeowners' association to residents that blamed a particular homeowner for a maintenance issue was protected because it was connected to a lawsuit filed against the homeowner.  (*Id*. at pp. 3, 5-6.)  Specifically, the court stated that "[b]ecause one purpose of the letter was to inform members of the association of pending litigation involving the association, the letter is unquestionably 'in connection with' judicial proceedings . . . ."  (*Id*. at pp. 5-6.)  The court reached this conclusion after noting that section 425.16, subdivision (e)(2) of the anti-SLAPP statute "does not require any showing that the matter being litigated concerns a matter of public interest."  (*Healy*, *supra*, at p. 5.)

Here, the e-mail sent by Doubson to Kozlova's other group session patients in December 2017 clearly referenced Doubson's actual intent to file a small claims court action and her desire to find witnesses.  Doubson did, in fact, end up filing four separate small claims cases, two of which were against Kozlova specifically.  Under these circumstances, we decide the e-mails to these patients in December 2017 were protected activity under section 425.16, subdivision (e)(2).  The burden therefore shifts to Kozlova in the second step of the anti-SLAPP analysis with respect to her claims based on Doubson's e-mails to Kozlova's patients.  (*Baral*, *supra*, 1 Cal.5th at p. 384.)

## 2.  The March 2019 Yelp Review

The second main activity that Doubson contends was protected is her March 2019 Yelp review.  She argued in the trial court that the Yelp review was protected as a

9

"written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest."  (§ 425.16, subd. (e)(3).)

A website accessible to the public is a public forum for purposes of the anti-SLAPP statute.  (*Wong v. Jing* (2010) 189 Cal.App.4th 1354, 1366 (*Wong*); see also *Wilbanks v. Wolk* (2004) 121 Cal.App.4th 883, 897 (*Wilbanks*).)  Not every website post, however, involves a public issue.  (*Wong*, *supra*, at p. 1366.)

Kozlova argues the Yelp review concerned a private dispute and was not a " 'public issue' " or " 'an issue of public interest.' "  Generally, a statement involves a public issue when it concerns a person or entity in the public eye, conduct that could directly affect a large number of people beyond the direct participants, or a topic of widespread, public interest.  (*Rivero v. American Federation of State*, *County and Municipal Employees*, *AFL-CIO* (2003) 105 Cal.App.4th 913, 924; *Wilbanks*, *supra*, 121 Cal.App.4th at p. 898.)  "[C]onsumer information that goes beyond a particular interaction between the parties and implicates matters of public concern that can affect many people is generally deemed to involve an issue of public interest for purposes of the anti-SLAPP statute."  (*Wong*, *supra*, 189 Cal.App.4th at p. 1366.)

Doubson's March 2019 Yelp review sets forth a chronology of some of her complaints about Kozlova, starting with a complaint to the Board of Psychology of California in July 2016, and later stating that the Attorney General's office is prosecuting Kozlova for aiding and abetting her husband's unlawful practice of psychology.  The Yelp review is similar to the statements at issue in *Wong* and *Wilbanks*.

In *Wong*, the plaintiff, a pediatric dentist, filed an action against two individuals and Yelp.com based on allegedly false assertions in a review criticizing dental services provided by the plaintiff to one of the individuals and their son.  (*Wong*, *supra*, 189 Cal.App.4th at p. 1359.)  In part, the review shared views on the use of silver amalgam and nitrous oxide, which had been used by the plaintiff.  (*Id*. at p. 1361.)  The defendants filed an anti-SLAPP motion.  (*Ibid*.)  Like Kozlova, the plaintiff in *Wong* argued the

10

review was not protected conduct because it only reflected a dispute between private parties about the manner in which private services were rendered. (*Id*. at p. 1362.)

The appellate court disagreed, finding the review "involved a public issue, namely public concern, discussion, and controversy about the use of silver amalgam because it contains mercury." (*Wong*, *supra*, 189 Cal.App.4th at p. 1367.) The court continued by stating that the posting went beyond a private dispute about dental appointments because it "implicitly dealt with the more general issues of the use of nitrous oxide and silver amalgam, implied that those substances should not be used in treating children, and informed readers that other dentists do not use them." (*Ibid*.)

*Wilbanks* concerned statements made against a viatical settlements brokerage,[7] and the owner of the brokerage, on the website of the defendant. (*Wilbanks*, *supra*, 121 Cal.App.4th at p. 889.) The defendant was a former insurance agent who acted as a " 'consumer watchdog' " and an expert on issues surrounding viatical settlements. (*Ibid*.) At issue in the case were statements the defendant published on her website warning that the brokerage was under investigation by the California Department of Insurance, and that the company provided incompetent advice and was unethical. (*Id*. at pp. 889-890.)

The appellate court first decided that the defendant's statements on her website were made in a public forum. (*Wilbanks*, *supra*, 121 Cal.App.4th at p. 897.) The court then determined that the defendant's statements regarding the plaintiffs' business practices did not meet the general criteria to constitute statements made in connection with a public issue because the plaintiffs were not in the public eye, their business practices did not affect a large number of people, and their business practices were not a topic of widespread interest. (*Id*. at p. 898.) The court noted, however, that consumer

---

[7] A viatical settlement is an arrangement that allows a dying person with life insurance to sell the policy to investors for a percentage of the death benefits. (*Wilbanks*, *supra*, 121 Cal.App.4th at p. 889.)

11

information, when it can affect a large number of people, is also usually viewed as information concerning a matter of public interest. (*Ibid*.) The court stated that the viatical industry touches a large number of people, and concluded that the information provided was consumer protection information because it was a warning not to use the plaintiff's services and could aid consumers in choosing among brokers. (*Id*. at pp. 899-900.)

Like the statements at issue in *Wong* and *Wilbanks*, Doubson's March 2019 Yelp posting goes beyond mere complaints about a private dispute. While there were some aspects of a more individualized, private nature in the review, Doubson also mentioned the fact that the Attorney General's office was prosecuting Kozlova, and that there were issues surrounding the unlicensed practice of psychology. Bringing attention to the ethical standards and licensing requirements for psychologists does not relate just to a private dispute; it concerns a public issue.

Further, in addition to explaining that the Attorney General's office was prosecuting Kozlova for various professional violations, Doubson stated in the review that "prospective clients considering engaging with [Kozlova] long term should carefully weigh whether it would be prudent to invest in a relationship with somebody who soon might not be able to see clients." This warning, like the one in *Wilbanks*, could aid consumers in choosing among psychologists.

In sum, we find that Doubson has carried her burden of showing that posting the March 2019 Yelp review was protected activity under section 425.16, subdivision (e)(3), and the burden therefore shifts to Kozlova in the second step of the analysis.

## 3. Other Purportedly Protected Activities

Doubson also asserted in the trial court and repeats in this court that Kozlova's request for civil harassment restraining orders arose out of three other protected activities by Doubson, namely (1) complaints Doubson filed with governmental agencies and with

12

the small claims court; (2) letters Doubson sent to Kozlova's educational institutions; and (3) messages Doubson sent to Kozlova's attorney. We examine each in turn.

### a. Complaints Filed with Agencies and Small Claims Court

Kozlova stated in her request for civil harassment restraining orders that Doubson filed two small claims actions against her, one against her husband, and one against Toren. Kozlova also asserted Doubson submitted complaints to various agencies such as the Department of Health and Human Services, and the California Board of Psychology.[8] Doubson asserts these are protected as a "written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law." (§ 425.16, subd. (e)(1).) We agree.

A claim for relief filed in court is a statement or writing made before a judicial proceeding. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 90.) Similarly, "a communication concerning possible wrongdoing, made to an official governmental agency . . . and which communication is designed to prompt action by that entity," is part of an " 'official proceeding.' " (*Williams v. Taylor* (1982) 129 Cal.App.3d 745, 753.) Therefore, Doubson has carried her burden of showing the filing and submission of these complaints was protected activity and the burden therefore shifts to Kozlova in the second step of the analysis.

---

[8] Doubson requests judicial notice of the January 31, 2020 order issued by the Board of Psychology of California. Because the order was not issued until 2020, it was not before the trial court. "In deciding the question raised by an appeal, a reviewing court will ordinarily look only to the record made in the trial court. While the reviewing court may take judicial notice of matters not before the trial court, it need not do so." (*Brosterhous v. State Bar* (1995) 12 Cal.4th 315, 325.) We decline to take judicial notice of the Board of Psychology's order as it is not relevant to our decision. (*Mangini v. R. J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063 ["Although a court may judicially notice a variety of matters [citation], only relevant material may be noticed."].)

### b. Communications With Kozlova's Educational Institutions

Kozlova stated in her request for civil harassment restraining orders that Doubson wrote to her educational institutions, Moscow State University in Russia, and Sophia University in Palo Alto, to demand the release of private information about Kozlova. Doubson contends these activities were protected as conduct in furtherance of the exercise of the constitutional right of petition in connection with a public issue or an issue of public interest. (§ 425.16, subd. (e)(4).) She provides no explanation on appeal of how these communications relate to the right of petition. In the underlying motion papers, she argued that she needed information to determine whether Kozlova made misrepresentations regarding her educational background, which could lead to a fraud action or a complaint with the Board of Psychology. Doubson provides no factual support for her contention that the communications were initiated with the intent to support legal action against Kozlova. Based on a lack of meaningful argument or relevant authority, we decide that Doubson has not carried her burden to show that these communications seeking private information from a third party were protected.

### c. Communications With Kozlova's Former Attorney

Kozlova stated in her request for civil harassment restraining orders that Doubson wrote dozens of messages to her former attorney in addition to a long e-mail message. The record reflects that Doubson wrote a long e-mail, dated September 29, 2016, to the attorney in response to a "cease and desist" letter.[9]

It is clear that "all communicative acts performed by attorneys as part of their representation of a client in a judicial proceeding or other petitioning context are per se protected as petitioning activity by the anti-SLAPP statute." (*Cabral v. Martins* (2009)

---

[9] Separate from the long e-mail message, the record contains no evidence of "dozens of messages." Doubson has, therefore, not carried her burden of showing that these messages are protected activity under the anti-SLAPP statute.

177 Cal.App.4th 471, 480; *Finton Construction*, *Inc*. *v*. *Bidna & Keys*, *APLC* (2015) 238 Cal.App.4th 200, 210; *Optional Capital*, *Inc*. *v*. *Akin Gump Strauss*, *Hauer & Feld LLP* (2017) 18 Cal.App.5th 95, 113.)  It follows, therefore, that a response to any communications from an attorney made in the course of the attorney's representation of a client is also protected when it concerns the subject of the dispute and is made in connection with or in preparation of litigation.  (See *Neville*, *supra*, 160 Cal.App.4th at p. 1268.)  Consequently, Doubson has carried her burden of showing the September 29, 2016 e-mail was protected activity, and the burden therefore shifts to Kozlova in the second step of the analysis.

## C.  The Second Step

We must determine whether Kozlova has met her burden on the second step of the anti-SLAPP analysis of showing her claim has " 'at least "minimal merit." ' " (*Bonni*, *supra*, 11 Cal.5th at p. 1009.)  We examine only those activities for which Doubson has carried her burden in step one:  the e-mails in December 2017 to Kozlova's group session patients, the March 2019 Yelp review, the complaints to the various agencies and filing of small claims actions, and the e-mail response to the cease and desist letter.[10]

Kozlova argues she has a probability of prevailing but, in doing so, she focuses on Doubson's unprotected conduct.  She states that even if some of Doubson's conduct is protected activity, there is a large amount of unprotected activity that would support a civil harassment order.

Kozlova's approach misses the mark.  The relevant question is whether there is a probability of prevailing on the claim arising out of the *protected* activity.  (*Baral*, *supra*, 1 Cal.5th at p. 392 [a special motion to strike "cannot be defeated by showing a

---

[10] The trial court's temporary restraining order itself is not at issue because Doubson has only appealed the anti-SLAPP order.  Consequently, we do not examine whether the trial court had the authority to issue the temporary restraining order.

15

likelihood of success on the claims arising from unprotected activity"].)  To prevail on the merits of a civil harassment petition, a plaintiff must present clear and convincing evidence of unlawful harassment as defined by section 527.6.  (*Thomas*, *supra*, 126 Cal.App.4th at p. 662.)  Kozlova makes no showing in this regard as it pertains to the protected activity, let alone one that meets the clear and convincing standard.

" 'When an issue is unsupported by pertinent or cognizable legal argument it may be deemed abandoned and discussion by the reviewing court is unnecessary.' "  (*Ochoa v. Pacific Gas & Electric Co.* (1988) 61 Cal.App.4th 1480, 1488, fn. 3.)  By failing to address whether her claim has minimal merit to the extent it is based on protected activities, Kozlova has failed to carry her burden of showing a probability of prevailing on a claim arising out of those activities.  Therefore, Doubson's anti-SLAPP motion is meritorious as to the protected activities:  the e-mails in December 2017 to Kozlova's group session patients, the March 2019 Yelp review, the complaints to the various agencies and filing of small claims actions, and the e-mail response to the cease and desist letter.  Consequently, allegations regarding those activities must be stricken from Kozlova's civil harassment complaint.  (See *Bonni*, *supra*, 11 Cal. 5th at p. 1012.)

Accordingly, we reverse the trial court's order on Doubson's motion to strike, but only as to the e-mails in December 2017 to Kozlova's group session patients, the March 2019 Yelp review, the complaints to the various agencies and filing of small claims actions, and the e-mail response to the cease and desist letter.  With respect to the remaining allegations made by Kozlova, we affirm the trial court's order denying Doubson's motion under section 425.16.

## D.  Attorney Fees and Costs

A prevailing defendant on a special motion to strike is entitled to recover attorney fees and costs.  (§ 425.16, subd. (c)(1).)  Because it denied Doubson's motion, the trial court also denied Doubson's request for attorney fees and costs.  On appeal, we have reversed in part the trial court's order on Doubson's anti-SLAPP motion.  While Doubson

did not accomplish her objective of having Kozlova's entire case dismissed, as originally sought by the motion, we have ordered that some of Kozlova's allegations be stricken as protected activities.

"[A] party who partially prevails on an anti-SLAPP motion must generally be considered a prevailing party unless the results of the motion were so insignificant that the party did not achieve any practical benefit from bringing the motion." (*Mann v. Quality Old Time Service, Inc.* (2006) 139 Cal.App.4th 328, 340.) We observe, however, that even where a prevailing party recovers fees, the amount may be adjusted based on "the significance of the overall relief obtained by the prevailing party in relation to the hours reasonably expended on the litigation and whether the expenditure of counsel's time was reasonable in relation to the success achieved." (*Id.* at p. 344.)

Although some of the protected activities are being removed from the case, other alleged activities remain that potentially could support the relief requested by Kozlova. As previously stated, we make no decision regarding the trial court's TRO and whether the remaining allegations can support that order or any further order. On remand, the trial court should determine the appropriate amount of attorney fees and costs to which Doubson is entitled upon a proper application by her.

**E. Representation in a Civil Harassment Case on a Contingent Fee Basis**

In addition to the anti-SLAPP motion, Doubson asserts there is another issue to be decided on appeal: whether it is unethical to represent a defendant in a civil harassment action on a contingent fee basis. Doubson raises this issue because of a hearing in which the trial judge expressed concern about the ethics of Doubson's attorney taking the case on a contingency basis.

Doubson's notice of appeal states only that she is appealing the November 19, 2019 order denying her special motion to strike. "While a notice of appeal must be liberally construed, it is the notice of appeal which defines the scope of the appeal by identifying the particular judgment or order being appealed." (*Morton v. Wagner* (2007)

17

156 Cal.App.4th 963, 967.)  Therefore, only the anti-SLAPP order is before this court for a decision.  Moreover, although the trial judge made comments regarding the contingency fee issue, the judge made no ruling that could be appealed.  We therefore decline to decide this question.

## F.  Disqualification of Trial Judge

As a final matter, Doubson requests that further proceedings be heard by a different trial judge pursuant to section 170.1, subdivision (c).[11]  Doubson argues a different judge should hear further proceedings because of statements made by the trial judge regarding the ethics of the contingent fee in this case.

We first note that, as previously stated, the issue of the contingency fee is not before us on this appeal.  We therefore have no occasion to address its propriety.

With regard to whether the judge's statements show bias, Doubson argues the judge's ruling on the anti-SLAPP motion supports this contention.  It is not apparent how Doubson reached this conclusion.  The anti-SLAPP order does not mention the contingent fee and simply analyzes the motion before the trial court.

The power of an appellate court to assign a new judge is to be "exercised sparingly."  (*People v. Superior Court* (*Dorsey*) (1996) 50 Cal.App.4th 1216, 1230.)  In this case, the trial judge's comments, by themselves, would not lead a reasonable person to conclude the judge was biased.  Further, a review of the record reveals nothing else that shows the trial judge cannot be fair.  Therefore, we deny Doubson's request that we direct that further proceedings be heard by a different trial judge.

---

[11] Section 170.1, subdivision (c) provides:  "At the request of a party or on its own motion an appellate court shall consider whether in the interests of justice it should direct that further proceedings be heard before a trial judge other than the judge whose judgment or order was reviewed by the appellate court."

### III.    DISPOSITION

The November 19, 2019 order denying Doubson's special motion to strike is reversed.  On remand, the trial court is directed to vacate its order denying the motion to strike and to enter a new order granting the motion in part and striking references to the following protected activities from Kozlova's civil harassment petition:  the e-mails to Kozlova's group session patients in December 2017, the March 2019 Yelp review, the complaints to the various agencies and filing of small claims actions, and the e-mail response to the cease and desist letter.  The new order shall state that the special motion to strike is otherwise denied.  Doubson's request that the Court of Appeal direct that further proceedings be heard by a different trial judge is denied.

The parties shall bear their own costs on appeal.

19

_____
　　　　　　　　　　　　　　　　Wilson, J.



WE CONCUR:




_____
　　　Greenwood, P.J.




_____
　　　Danner, J.




Kozlova v. Doubson
H047759