Filed 8/9/22 Premier Brain & Spine Institue v. Cudia CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| PREMIER BRAIN & SPINE INSTITUTE, INC. et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> JILL CUDIA, <br><br> Defendant and Appellant. | H048332 <br> (Santa Clara County <br> Super. Ct. No. 19-CV-351955) |

Defendant Jill Cudia posted negative reviews on two websites about a spine surgery and post-surgery care by plaintiffs Premier Brain & Spine Institute, Inc., and Edward Rustamzadeh, M.D. Plaintiffs sued defendant for libel and false light invasion of privacy. Defendant appeals the trial court's denial of her special motion to strike the complaint as a strategic lawsuit against public participation (SLAPP). (Code Civ. Proc., § 425.16.) Finding no prejudicial error, we will affirm the order denying the motion.

## I. TRIAL COURT PROCEEDINGS

According to plaintiffs' complaint, in July 2019 defendant posted two reviews on the Yelp consumer review website that contained false statements about them. Copies of the reviews as they appeared on Yelp were attached to the complaint. The later of the reviews is as follows (with italics indicating portions alleged to be false): "*Edward Rustamzdeh* [*sic*] *neglects his patients as soon as he is done operating. He is non responsive, abusive, condescending and has zero bed side manner*. When I was one month post surgery (an S1 to L5 fusion and decompression of the nerves), I began having

sharp shooting pain down both my legs and in my lower back. It obviously scared me to death, and I called his office immediately. *His medical assistant, Nicole, diagnosed me over the phone telling me I had sciatica* and to see my primary care physician. I was shocked and said I wanted to see the doctor. She said, he didn't want to see me. I called every day for 10 business days until he would see me. When he did, he sat in his chair leaned back and told me he had done everything perfectly in surgery and maybe I should go on Cymbalta. I left there devastated. So, I dealt with the pain until my 3 month follow up and came with the xray CD in hand. He then refused to see me unless I paid my $1,180.39 current bill (yes I just received the bill the Thursday before (6-28-19) and had my 3 month follow up on July 2nd, 2019[)]. I still have not had my follow up care and am not [*sic*] having to look for another doctor to hopefully help me. The nerve pain is worse not better. His website says he treats sciatica *but he only operates and then wants nothing to do with a patients* [*sic*] *aftercare. Neglect is the only word to describe his treatment.* Do not use this surgeon." (Errors in original.) Defendant also posted a review with identical language to a different website, www.ratemds.com.

The earlier Yelp review is much lengthier, and contains similar subject matter. Plaintiffs allege the following italicized statements from that review are false (we include some unchallenged portions for context): "*He only wants to operate, and has no bedside manner, does not treat pain (especially post surgery) and the words that describe*[] *his overall care is neglect.* ... This was for an S1 to L5 fusion (27 staples, an 8" incision down my spine, 3" incision on my abdomen) and decompression of the nerves, *and he has refused post surgical treatment. The best word to describe him is ... a butcher.*" Later in that review, defendant stated: "*Your care has been nothing short of neglectful. I can only assume that you know you rushed me into surgery, without doing a thorough analysis, and you know that you failed as a result. I don't believe you want to face the fact that you made me worse, not better, even though you swore on my first unpaid office visit that you would indeed fix me. ... You only want to get people on the operating table,*

2

*and want nothing to do with after care, or any type of treatment, as referenced/advertised on your website. ...* Based on your actions and your treatment of me, *you must actually truly think you are 'God'."*

Plaintiffs sued defendant the same month, asserting two causes of action for libel (one per plaintiff) and one cause of action for invading Rustamzadeh's privacy by portraying him in a false light. Defendant moved to strike the complaint under the anti-SLAPP statute. As part of their opposition, plaintiffs filed declarations by several individuals including Rustamzadeh and his personal assistant, Nicole Saito, to demonstrate the falsity of certain statements in the posted reviews. (We describe the declarations in greater detail in Part II.B.2.)

The trial court denied defendant's anti-SLAPP motion by written order. The court questioned whether the reviews were sufficiently connected with an issue of public interest, but concluded defendant had met her burden on that issue. The court went on to conclude that plaintiffs had demonstrated a probability of prevailing on the merits because the reviews included statements of fact that could be proven false, and plaintiffs' declarations (particularly those of Rustamzadeh and Saito) provided prima facie evidence of falsity.

## II.    DISCUSSION

The anti-SLAPP statute is "designed to protect defendants from meritless lawsuits that might chill the exercise of their rights to speak and petition on matters of public concern." (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 883–884.) A defendant may file a special motion under the statute to strike claims "arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." (Code Civ. Proc., § 425.16, subd. (b)(1); unspecified statutory references are to this section.) Courts evaluate anti-SLAPP motions in a two-step process. First, the

3

defendant has the burden to show the challenged claims arise from protected activity.[1]  If the defendant meets that burden, in the second step the plaintiff must show a likelihood of prevailing on the merits.  We review de novo a trial court's decision on an anti-SLAPP motion.  (*Wilson*, at p. 884.)

### A. STEP ONE:  THE REVIEWS DID NOT ADDRESS AN ISSUE OF PUBLIC INTEREST

Defendant argues the reviews are protected activity as "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest."  (§ 425.16, subd. (e)(3).)  Plaintiffs acknowledge the reviews were posted to public forums, but contend they are not protected activity because they were not made in connection with an issue of public interest.

"Evaluating what qualifies as an issue of 'public interest' inherently requires consideration of the public/private distinction, a notoriously malleable standard."  (*Woodhill Ventures, LLC v. Yang* (2021) 68 Cal.App.5th 624, 631 (*Woodhill*).)  "[T]here should be some degree of closeness between the challenged statements and the asserted public interest."  (*Weinberg v. Feisel* (2003) 110 Cal.App.4th 1122, 1132.)  " '[A] matter of concern to the speaker and a relatively small, specific audience is not a matter of public interest,' " and a " 'person cannot turn otherwise private information into a matter of public interest simply by communicating it to a large number of people.' "  (*Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 621 (*Rand*).)  Courts have identified three subcategories of statements that involve issues of public interest:

---

[1]  The four categories of protected activity are:  "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."  (§ 425.16, subd. (e).)

statements about a person or entity in the public eye; statements that could directly affect a large number of people beyond the direct participants; and statements about a topic of widespread public interest. (*Ibid.*)

*Woodhill* is instructive, and we invited supplemental briefing about its applicability here. That case involved a dispute between a parent and a baker over a custom " 'modern Mad Science Birthday Party' " theme cake that contained edible pill-shaped decorations that the parent thought looked too much like real medication. (*Woodhill*, *supra*, 68 Cal.App.5th at pp. 626–627.) The parent posted about the dispute on social media and his podcast, complaining that the baker " 'put RX prescription pills' " on the cake and refused to make a new one. (*Id.* at p. 629.) The baker reportedly received threats of violence from the parent's social media followers. The baker sued the parent for libel, and the parent moved to strike the complaint. (*Id.* at pp. 628–630.) The *Woodhill* court concluded the parent had not demonstrated his statements related to a matter of public interest. (*Id.* at p. 632.) Rejecting the parent's argument that his statements "involve[d] an issue of public interest because they were about the dangers of 'candy confusion,' or children mistakenly eating pills they believe are candy," the *Woodhill* court emphasized that the parent's statements "did not discuss the danger of children confusing medications for candy" and did not seek public discussion of anything. (*Ibid.*) The court also rejected the parent's argument that his social media posts provided consumer protection information. (*Id.* at p. 634.) After reviewing consumer protection anti-SLAPP cases, the court reasoned that those authorities extend protection "only when the 'consumer information' goes beyond recounting a one-time dispute between a buyer and a seller." (*Ibid*.) It found the parent's statements related to a single transaction with the baker and were not part of a larger discussion. (*Id*. at p. 636.)

Similarly here, defendant's online reviews were limited to her interactions with plaintiffs relating to her spinal surgery and post-surgical treatment. The statements in her

reviews did not invite or promote public discussion about any broader issue of public interest. Defendant simply left negative reviews after receiving what she believed was neglectful treatment. Indeed, in her discussion of the merits of plaintiffs' claims (in step two of the anti-SLAPP analysis), defendant herself states the comments "never go beyond her subjective judgment and her experience" with plaintiffs. Because defendant's public forum statements were not made in connection with an issue of public interest, her statements were not protected activity under the anti-SLAPP statute.

Defendant's arguments to the contrary are unpersuasive. She contends courts have "repeatedly found that the competence and qualifications of medical professionals is of public interest and public statements about their services are protected under the [a]nti-SLAPP statute." But the cases defendant cites for that proposition involved speech about medical professionals' pattern of practice relating to multiple patients, significantly broadening the topic. (See *Yang v. Tenet Healthcare Inc.* (2020) 48 Cal.App.5th 939, 943–944 [defendant hospital told providers and members of the public that surgeon rendered care below applicable standards and was under investigation for performing surgeries she was not privileged to perform]; *Healthsmart Pacific, Inc. v. Kabateck* (2016) 7 Cal.App.5th 416, 422–425 [defendant attorneys told the press about the lawsuit they were pursuing against a doctor and his spinal surgery hospital alleging use of counterfeit medical hardware in thousands of procedures].)

Defendant contends her statements are protected because they were made on a consumer review website. But the nature of the forum does not automatically confer public interest. *Wong v. Jing* (2010) 189 Cal.App.4th 1354 (*Wong*), similarly involved a Yelp review by the parents of a child who was treated by a dentist. (*Id.* at p. 1361.) The review stated the type of anesthetic used by the dentist " 'harms a kid's nervous system' " according to the parents' new dentist, and that the type of filling used by the dentist " 'has a small trace of mercury in it.' " (*Ibid.*) In finding that the review was made in connection with an issue of public interest, the court reasoned "the posting went beyond

6

parochial issues concerning a private dispute about particular dental appointments" and "implicitly dealt with the more general issues of the use of nitrous oxide and silver amalgam, implied that those substances should not be used in treating children, and informed readers that other dentists do not use them." (*Id.* at p. 1367.) By contrast here, defendant's reviews did not mention or invite discussion (implicitly or otherwise) on any broader issue of public interest.

Defendant cites *Carver v. Bonds* (2005) 135 Cal.App.4th 328, where a podiatrist sued the publisher of the San Francisco Chronicle and professional athletes for defamation after the newspaper published an article suggesting the podiatrist inflated his connections to famous athletes to obtain more business. (*Id.* at pp. 332–334.) The court found the article was protected activity because it "warned readers not to rely on doctors' ostensible experience treating professional athletes, and told what it described as 'a cautionary tale' of [the plaintiff podiatrist] exaggerating that experience to market his practice." (*Id.* at p. 344.) Here again, we do not view defendant's comments as touching on a broader topic of widespread public interest.

Defendant argues her reviews were "in the public interest" because they made statements about plaintiffs' billing practices, advertising, post-surgery care, the outcome of her surgery, and communication regarding treatment. But defendant fails to show how statements about her individual dispute with plaintiffs would directly affect a large number of people beyond the direct participants. (*Rand*, *supra*, 6 Cal.5th at p. 621.)

We conclude defendant's statements were not protected activity because they were not made in connection with an issue of public interest.

## B. STEP TWO: PLAINTIFFS HAVE SHOWN A PROBABILITY OF PREVAILING

Even assuming defendant's reviews constituted protected activity, we find no error in the trial court's order. The second step of the anti-SLAPP analysis shifts the burden to plaintiffs to make a prima facie showing of likely succeeding on the merits. At the second step, we do not weigh evidence or resolve conflicting factual claims. (*Baral v.*

7

*Schnitt* (2016) 1 Cal.5th 376, 384 (*Baral*).) We accept a plaintiff's evidence as true and consider a defendant's showing only to determine if it defeats the claim as a matter of law. Our inquiry is "limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment." (*Id.* at pp. 384–385.)

"The elements of a defamation claim are (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage." (*Wong, supra,* 189 Cal.App.4th at p. 1369.) "Libel is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." (Civ. Code, § 45.) As a statement must contain a provable falsehood to be libelous, " 'courts distinguish between statements of fact and statements of opinion for purposes of defamation liability.' " (*Wong,* at p. 1370.) The question is " ' "whether a reasonable fact finder could conclude the published statement declares or implies a provably false assertion of fact." ' " (*Ibid.*) We review both the language of the statement and the context in which it was made to determine whether in the totality of the circumstances a challenged statement is actionable fact or nonactionable opinion. (*Ibid.*)

Defendant does not dispute she published the reviews online, nor does she contend any of her statements were privileged. And publishing false reviews about doctor's (and office staff's) professional abilities has a natural tendency to injure. The focus is therefore on whether the reviews contained provably false assertions of fact, and whether plaintiffs made a prima facie showing that any such assertions were false.

### 1. The Reviews Contain Provably False Factual Assertions

Defendant argues that her reviews contained nothing but her "personal opinion of the treatment she received and that her posting [was] an emotional response as opposed to dispassionate assessment of [plaintiffs'] care." She contends her comments "never go

8

beyond her subjective judgment and her experience" with plaintiffs. We agree that certain statements—such as that Rustamzadeh is a butcher or that he believes he is God—are hyperbolic opinion rather than provably false factual assertions. But defendant's reviews also alleged specific facts about plaintiffs that can be proven false. We focus on three statements in defendant's reviews that contain provably false factual assertions: (1) her contention that personal assistant Saito "diagnosed [defendant] over the phone telling [her she] had sciatica and to see [defendant's] primary care physician"; (2) her contention that Rustamzadeh "swore on [her] first unpaid office visit that [he] would indeed fix [her]"; and (3) her contention that Rustamzadeh "rushed [her] into surgery, without doing a thorough analysis, and [he knew that he] failed as a result." As each of those statements involve situations where defendant was present, plaintiffs can prove actual malice—i.e., that defendant knew her statement was untrue or that she acted with reckless disregard for its truth—by proving that the statements were false. (*ZL Technologies, Inc. v. Does 1-7* (2017) 13 Cal.App.5th 603, 631.)

Defendant contends "courts have consistently recognized that online review sites and message boards, like the ones [defendant] posted on, are forums that readers understand and expect posters to state strongly worded opinions that play fast and loose with facts." (Citing *Summit Bank v. Rogers* (2012) 206 Cal.App.4th 669, 696.) But the website at issue in that case was a "section of the Craigslist Web site entitled 'Rants and Raves' " (*id.* at p. 696), whereas here the reviews were posted on the Yelp consumer review site. Seen in context, defendant's reviews contain provably false factual assertions.

Regarding the statement in the review that personal assistant Saito diagnosed defendant over the phone with sciatica, defendant argues that plaintiffs cannot prevail on a defamation claim about that statement because it defames only Saito and not Rustamzadeh or Premier Brain & Spine Institute, Inc. But a false statement suggesting that a corporation's employee and a doctor's personal assistant engaged in the unlicensed

9

practice of medicine undoubtedly has a tendency to injure both the corporation and the doctor. The statement is " 'of and concerning' " both plaintiffs, and the argument to the contrary is without merit. (*Issa v. Applegate* (2019) 31 Cal.App.5th 689, 702 (*Issa*).)

Defendant argues, without citation to authority, that even if certain statements are provably false factual assertions, "the remainder of [defendant's] post is non-actionable and should be stricken from the Complaint." But context is important in deciding the merits of a defamation case (see *Wong*, *supra*, 189 Cal.App.4th at p. 1370).

## 2. Plaintiffs Met Their Burden to Show the Factual Assertions Were False

Plaintiffs submitted declarations of several individuals as part of their opposition to the anti-SLAPP motion, including Rustamzadeh, personal assistant Saito, a doctor who assisted Rustamzadeh with defendant's surgery, and two former patients of Rustamzadeh. We agree with the trial court that the only declarations relevant to demonstrating the falsity of defendant's statements are those of Rustamzadeh and personal assistant Saito because they were the only individuals with personal knowledge of the conduct discussed in the online reviews.

The first challenged statement is that personal assistant Saito "diagnosed [defendant] over the phone telling [her she] had sciatica and to see [defendant's] primary care physician." Saito's declaration unequivocally denies doing so: "I never diagnosed [defendant] over the phone. I never told [defendant] she had sciatica." Because we must accept plaintiffs' evidence as true at this step and nothing in defendant's showing defeats the claim as a matter of law (*Baral*, *supra*, 1 Cal.5th at pp. 384–385), plaintiffs have demonstrated a probability of prevailing as to this statement. Defendant argues the "thrust" of the reviews was that plaintiffs were refusing to treat her pain and that the "gist" of the reviews is true even if the "parties dispute the details of the statement by Ms. Saito." (Citing *Issa*, *supra*, 31 Cal.App.5th at p. 708.) But defendant's statement about what Saito allegedly told her is more specific than her general statements about

10

plaintiffs' care. The specific comment about Saito ultimately asserts that plaintiffs allowed an employee to engage in the unlicensed practice of medicine.

The second challenged statement is that Rustamzadeh "swore on [defendant's] first unpaid office visit that [he] would indeed fix [her]." Rustamzadeh's declaration unequivocally denies that he made any such promise. Rustamzadeh declares: "I never swore that I would fix [defendant], but I instead explained to her the risk benefit analysis of performing surgery at her initial appointment." Accepting plaintiffs' evidence as true, and finding nothing in defendant's showing which disproves it as a matter of law, plaintiffs have demonstrated a probability of prevailing as to this statement which would have a natural tendency to harm a doctor's reputation.

Similarly harmful is the third challenged statement that Rustamzadeh "rushed [defendant] into surgery, without doing a thorough analysis, and [he knew] that [he] failed as a result." Rustamzadeh declared that he "performed a thorough analysis of [defendant's] medical condition before making the determination to perform surgery on her spine." The declaration continues: "She had multiple prior failed back surgeries, and had daily ongoing back pain, nerve pain down her legs into her feet, numbness, tingling, trouble sleeping on her sides, and was tender to the touch on both legs. After analyzing her condition, I recommended surgery and went over the risks and benefits with her." Contrary to defendant's argument that Rustamzadeh merely "rebut[ted] [defendant's] opinion with nothing but his own opinion," the declaration (which we accept as true at this stage of the proceedings) demonstrates that Rustamzadeh gathered information from defendant about prior surgeries and current symptoms, and he explained to her the risks and benefits before recommending surgery.

Because plaintiffs demonstrate sufficient probability of prevailing on their defamation causes of action, the trial court properly denied the anti-SLAPP motion as to those causes of action. And because a false light claim coupled with a defamation claim "stands or falls on whether it meets the same requirements as the defamation cause of

11

action" (*Eisenberg v. Alameda Newspapers, Inc.* (1999) 74 Cal.App.4th 1359, 1385, fn. 13), the trial court properly denied the motion as to that cause of action as well.

## III. DISPOSITION

The order denying defendant's special motion to strike is affirmed. As prevailing parties, plaintiffs are entitled to their costs on appeal by operation of California Rules of Court, rule 8.278(a)(1).

_____

Grover, J.

**WE CONCUR:**

_____

Greenwood, P. J.

_____

Lie, J.

H048332 - *Premier Brain & Spine Institute, Inc. et al. v. Cudia*