Filed 6/20/23  Zenteno v. Conroy CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| JUAN ZENTENO et al.,<br><br>    Plaintiffs and Respondents,<br><br>    v.<br><br>ROCHELLE CONROY,<br><br>    Defendant and Appellant. | B311202<br><br>(Los Angeles County Super. Ct. No. 20STCV03904) |

APPEAL from an order of the Superior Court of Los Angeles County, Maureen Duffy-Lewis, Judge. Affirmed.

Morris & Stone and Aaron P. Morris for Defendant and Appellant.

Mostafavi Law Group and Amir Mostafavi for Plaintiffs and Respondents.

**INTRODUCTION**

Juan Zenteno and HP Highland Postal Center Inc. (HP) sued Rochelle Conroy for allegedly false statements she made online about Zenteno and HP.[1] Conroy appeals from the trial court's order granting in part and denying in part her special motion to strike the operative complaint under Code of Civil Procedure section 425.16, the anti-SLAPP statute.[2] For the reasons discussed below, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

**A.    The Second Amended Complaint's Allegations**

The second amended complaint (SAC) alleges the following facts.[3] Zenteno is an employee and shareholder of HP. HP is a business offering shipping and mailing services, including personal and business mailboxes.

From 2014 to 2017, Conroy rented a mailbox from HP. In 2017, HP terminated the mailbox rental agreement between it and Conroy because she came into the store screaming and accusing Zenteno of stealing her mail, and her dog was not leashed on several occasions.

---

1    We refer to Zenteno and HP collectively as plaintiffs. Plaintiffs also sued Guido Giovanni Giammarco, but he is not a party to this appeal.

2    SLAPP is the acronym for strategic lawsuit against public participation. All further undesignated statutory references are to the Code of Civil Procedure.

3    We omit allegations regarding Giammarco because they are not relevant to this appeal.

On August 21, 2019, Conroy wrote and posted statements about Zenteno on Nextdoor.com, an online social network in which registered users can communicate with other nearby users and stay informed about what is happening in the neighborhood. One of Conroy's posts stated, among other things, that "persons using [HP] for Amazon returns risk not having their packages delivered because [Zenteno] 'is a crook and not to be trusted. He has a horrible demeanor and his shop should be avoided at all costs so he goes out of business. The Palisades doesn't need such a horrible business in our town.'"

On April 20, 2020, Conroy emailed plaintiffs' counsel stating Zenteno "is 'guilty of tampering with official United States Treasury mail' and that he was a crook." In the same email, Conroy stated "she has 'contacted the lady who posted that [Zenteno] stole an insurance check and took it to Wells Fargo to try and cash it.'"

After publication of the "false and malicious statements" made on August 21, 2019 and April 20, 2020, "Plaintiffs' reputations were significantly damaged in their community."

Based on these allegations, plaintiffs sued Conroy for six causes of action: (1) defamation-libel; (2) trade libel; (3) intentional interference with contractual relations; (4) intentional interference with prospective economic relations; (5) negligent interference with prospective economic relations; (6) negligent infliction of emotional distress.

## B. The Special Motion to Strike

Conroy moved to strike the SAC, contending the statements underlying its six causes of action are protected under the anti-SLAPP statute, and plaintiffs could not demonstrate a probability of prevailing on the merits of their claims.

3

Specifically, Conroy contended the statements she made on Nextdoor.com, detailed in paragraph 19 of the SAC, are protected under section 425, subdivisions (e)(3) and (e)(4), because they were statements made in a public forum in connection with an issue of public interest. She further contended the statements in paragraph 21 of the SAC (regarding the email to plaintiffs' counsel) constitute protected speech under section 425, subdivision (e)(2), because the statements "occurred during a settlement discussion, related to the litigation, between [Conroy] and [p]laintiffs' counsel . . . ." Conroy next argued plaintiffs could not demonstrate a probability of prevailing on their first cause of action for libel because, according to Conroy, the statements made in paragraph 19 are hyperbolic opinion, and the statements in paragraph 21 are absolutely privileged under Civil Code section 47, subdivision (b). Finally, she argued the remaining causes of action should be stricken because "each is merely derivative of the libel claim."

In opposition, plaintiffs argued Conroy's statements in paragraph 19 were not a matter of widespread public interest, and the statements in paragraph 21 were "merely provided as evidence" of why Zenteno believes Conroy continues to accuse Zenteno of tampering with mail, not as a basis of Zenteno's causes of action. Alternatively, plaintiffs contended that even if the statements are protected under the anti-SLAPP statute, they can demonstrate a probability of prevailing on the merits because the statements are provable false assertions of fact.

After a hearing on the special motion to strike, the trial court granted the motion in part and denied it in part. We cannot, based on the language of the minute order alone, decipher the court's precise findings because it refers to

4

statements using letters and numbers (i.e., 1A, 2B, etc.) without identifying those statements. The parties agree, however, that the trial court made the following rulings, as relevant to this appeal: (1) the statements made in paragraphs 19 and 21 of the SAC constitute protected activity under the anti-SLAPP statute; (2) the statements in paragraph 21 of the SAC were stricken because they are subject to the litigation privilege; (3) plaintiffs established a probability of prevailing on the merits of causes of action one through four based on the statements in paragraph 19 of the SAC; and (4) the fifth and sixth causes of action were stricken from the SAC because "[t]here is no such cause of action as Negligent Interference with Prospective Business" and "Negligent Infliction of Emotional Distress is a personal injury tort for bystander distress."

Conroy then moved for attorneys' fees and costs under section 415.16, subdivision (c)(1), as the partially prevailing party on her anti-SLAPP motion. The court granted the motion, awarding attorneys' fees to Conroy in the amount of $25,000.

Conroy timely appeals from the order on her anti-SLAPP motion to the extent it was denied.

## DISCUSSION

### A.    The Anti-SLAPP Statute and Standard of Review

SLAPP suits are "generally meritless suits brought by large private interests to deter common citizens from exercising their political or legal rights or to punish them for doing so." (*Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 816, disapproved on another ground in *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 68.) To combat these types of suits, the Legislature enacted section 425.16—known as the anti-SLAPP statute—to provide a procedural remedy to dispose of lawsuits or

individual causes of action that are brought to chill the valid exercise of a person's constitutional rights. (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055-1056; see *Baral v. Schnitt* (2016) 1 Cal.5th 376, 395; § 425.16, subd. (b)(1).)

The anti-SLAPP statute requires a two-step process: first, the moving party must establish that the lawsuit's claims are based on activity protected by the statute. (*Briganti v. Chow* (2019) 42 Cal.App.5th 504, 508 (*Briganti*).) If the defendant meets that burden, the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated. (*Ibid.*) "'[W]ithout resolving evidentiary conflicts,'" the court must determine whether the plaintiff's showing, if accepted by the trier of fact, would be sufficient to sustain a favorable judgment; if not, the claim is stricken. (*Ibid.*) "In making these determinations the court considers 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' (§ 425.16, subd. (b)(2).)" (*Briganti, supra,* 42 Cal.App.5th at p. 508.) "A cause of action is subject to dismissal under the statute only if both steps of the anti-SLAPP analysis are met." (*Malin v. Singer* (2013) 217 Cal.App.4th 1283, 1293.)

We review the trial court's decision to grant or deny an anti-SLAPP motion de novo. (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788.)

## B.     First Prong: Protected Activity

Conroy's sole contention on appeal is although the trial court correctly found the statements posted on Nextdoor.com (the paragraph 19 statements) constitute protected activity, it erred by concluding those statements are sufficient to support

6

plaintiffs' causes of action for defamation-libel, trade libel, intentional interference with contractual relations, and intentional interference with prospective economic relations (causes of action one through four). We therefore limit our analysis to the paragraph 19 statements, beginning with whether those statements constitute protected activity under the anti-SLAPP statute.

It is undisputed that on August 21, 2019, Conroy wrote a post on Nextdoor.com titled, "Amazon at Carusoville versus [Zenteno] at HP Highland Post." Paragraph 19 of the SAC quotes only an excerpt of the post. For context, however, we quote the post in its entirety: "I was pleasantly surprised to be able to easily drop of[f] a return at the Amazon bookstore at Carusoville. I will never shop there as I can't stand what he has done to my town, however, I am happy to use the resources. The people were pleasant and nice to deal with. [¶] For those of you who think [Zenteno] at HP Highland Post is great for Amazon returns, you can stop using him. You risk not having your package delivered as he is a crook and not to be trusted. He has a horrible demeanor and his shop should be avoided at all costs so he goes out of business. The Palisades doesn't need such a horrible business in our town. [¶] The people at Amazon at Carusoville were way nicer to engage with and I highly urge you to use the Amazon store in the Palisades to execute your returns."

Conroy contends the statements on Nextdoor.com are protected under section 425.16, subdivision (e)(3), as written statements "made in a place open to the public or a public forum in connection with an issue of public interest[.]" She therefore contends the first prong of the anti-SLAPP statute is satisfied because the paragraph 19 statements form the basis of the causes

7

of action against her in the SAC. Plaintiffs do not contest the statements were made in a public forum. (See *Barrett v. Rosenthal* (2006) 40 Cal.4th 33, 41, fn. 4 ["Web sites accessible to the public . . . are 'public forums' for purposes of the anti-SLAPP statute"].) They argue, however, that Conroy's post does not involve an issue of public interest. As discussed below, we agree with Conroy.

Section 425.16 does not define "public interest[,]" but our Supreme Court set forth a general definition by identifying a "nonexclusive and sometimes overlapping" list of three qualifying categories of statements or conduct: (1) the statement concerns a person or entity in the public eye; or (2) the statement involves conduct that could directly affect a large number of people beyond the direct participants; or (3) the statement involves a topic of widespread public interest. (*Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 621, citing *Rivero v. American Federation of State, County, and Municipal Employees, AFL-CIO* (2003) 105 Cal.App.4th 913, 919-924.) Additionally, "although 'not every Web site post involves a public issue [citation], consumer information that goes beyond a particular interaction between the parties and implicates matters of public concern that can affect many people is generally deemed to involve an issue of public interest for purposes of the anti-SLAPP statute." (*Wong v. Jing* (2010) 189 Cal.App.4th 1354, 1366 (*Wong*); see also *Wilbanks v. Wolk* (2004) 121 Cal.App.4th 883, 898 (*Wilbanks*) ["[c]onsumer information" posted on the Internet "at least when it affects a large number of persons, also generally is viewed as information concerning a matter of public interest"].) The public interest requirement of section 425.16, subdivision (e)(3), must be "'construed broadly' so as to encourage participation by all

8

segments of our society in vigorous public debate related to issues of public interest." (*Seelig v. Infinity Broadcasting Corp*. (2002) 97 Cal.App.4th 798, 808, citing § 425.16, subd. (a).)

Applying these principles, we agree with the trial court that Conroy's post was made "in connection with an issue of public interest[.]" (§ 425.16, subd. (e)(3).) Beginning with the title of the post, "Amazon at Carusoville versus [Zenteno] at HP Highland Post[,]" it is clear to the reader that the purpose of the post is to review two businesses. The substance of the post confirms that purpose. It compares the businesses by stating, in part, that "[t]he people were pleasant and nice to deal with" at Amazon compared to Zenteno who has a "horrible demeanor." It further  warns consumers not to use HP's mailing services, otherwise "[y]ou risk not having your package delivered . . . . ." The post concludes by "urg[ing]" consumers to "use the Amazon store" instead of HP. Moreover, the post is written in general terms, seemingly based on Conroy's many interactions with Zenteno, going "beyond a particular interaction between [Conroy and Zenteno]." (*Wong, supra,* 189 Cal.App.4th at p. 1366.) We therefore conclude this post falls squarely into the "[c]onsumer information" category, which "generally is viewed as information concerning a matter of public interest." (*Wilbanks, supra*, 121 Cal.App.4th at pp. 898-900 [statements about an insurance broker were a matter of public concern because the defendant's warning not to use the broker was "ostensibly provided to aid consumers choosing among brokers"].) That only nine people commented on the post does not, as plaintiffs contend, turn the post into a private dispute between Zenteno and Conroy. Notwithstanding the relatively small number of people who took the time to reply to the post, members of the public, as potential

9

customers of HP, have an interest in being informed of Zenteno's alleged untrustworthiness.

Plaintiffs' reliance on *Jeppson v. Ley* (2020) 44 Cal.App.5th 845 (*Jeppson*) is misplaced. In *Jeppson*, the plaintiff sued the defendant for defamation based on a statement the defendant posted on Nextdoor.com. (*Id*. at p. 848.) But the similarities stop there. In *Jeppson*, two neighbors were in a feud because defendant's "dog killed [plaintiff's] cat." (*Ibid*.) They settled the dispute, and entered into an agreement with a nondisparagement clause. (*Ibid*.) The defendant, however, posted a "hostile message" on Nextdoor.com stating, in part, that: he felt it was important to provide information about the case against [plaintiff] for trespassing and vandalism on his neighbor's property; a restraining order had been issued against the plaintiff; "and the courts forced [plaintiff] to relinquish his gun arsenal due to the danger he poses to his neighbors." (*Id*. at pp. 848-849.) Plaintiff sued the defendant for breach of contract, defamation, and intentional infliction of emotional distress. (*Id*. a p. 849.) Defendant filed an anti-SLAPP motion, which the trial court denied because the statements raised no issue of public interest. (*Id*. at p. 848.) The Court of Appeal affirmed, concluding "this neighborhood flap did not raise issues about the 'public interest,' even though it made an appearance on the internet." (*Id*. at p. 857.) Rather, the defendant's "words [were] merely an effort to gather ammunition for another round in the speaker's neighborhood wrangle." (*Id*. at p. 856.)

The facts here are different. As discussed above, Conroy's post was not merely about a "fracas between neighbors" (*Jeppson, supra,* 44 Cal.App.5th at p. 854), or a recounting of a one-time dispute. Unlike the statements in *Jeppson*, here, Conroy's post

10

warned consumers about Zenteno's business and urged consumers to use a competitor based on her dealings with plaintiffs over the years. *Jeppson*, therefore, does not assist plaintiffs.

Accordingly, we conclude Conroy met her burden of establishing the post on Nextdoor.com constitutes protected activity under section 425.16, subdivision (e)(3), and the burden therefore shifts to plaintiffs in the second step of the analysis.

## C.    Second Prong: Probability of Success

Under the second prong of the anti-SLAPP analysis, plaintiffs have the burden of establishing a probability of prevailing on their claims. (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 733; § 425.16, subd. (b)(1).) Only a cause of action that "lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.) "At this stage, "'[t]he court does not weigh evidence or resolve conflicting factual claims. Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment. It accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law.""" (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 891.)

Conroy contends plaintiffs have not met their burden to demonstrate a probability of prevailing on their claim for libel because her post contains nonactionable statements of opinion rather than fact. [4] We are unpersuaded.

---

4    Libel is a form of defamation effected in writing. (Civ. Code, §§ 44 & 45.)

"'The sine qua non of recovery for defamation . . . is the existence of falsehood.' [Citation.] Because the statement must contain a provable falsehood, courts distinguish between statements of fact and statements of opinion for purposes of defamation liability. Although statements of fact may be actionable as libel, statements of opinion are constitutionally protected." (*McGarry v. University of San Diego* (2007) 154 Cal.App.4th 97, 112.) "The critical determination of whether the allegedly defamatory statement constitutes fact or opinion is a question of law." (*Gregory v. McDonnel Douglas Corp.* (1976) 17 Cal.3d 596, 601.) In determining whether an opinion is actionable, we must look at the totality of the circumstances which gave rise to the statements and in particular the context in which the statements were made. (*Franklin v. Dynamic Details, Inc.* (2004) 116 Cal.App.4th 375, 385.) "'This contextual analysis demands that the courts look at the nature and full content of the communication and to the knowledge and understanding of the audience to whom the publication was directed.'" (*Id.* at p. 389)

Here, as discussed above, the SAC alleges Conroy's "false and malicious" post "stated, among other things, that persons using [HP] for Amazon returns risk not having their packages delivered because [Zenteno] 'is a crook and not to be trusted. He has a horrible demeanor and his shop should be avoided at all costs so he goes out of business. The Palisades doesn't need such a horrible business in our town.'" Conroy characterizes her post as merely hyperbolic opinion that conveys no provable factual assertions. But "[t]he critical question is not whether a statement is fact or opinion, but '"whether a reasonable fact finder could conclude the published statement declares or implies a provably false assertion of fact."'" (*Wong, supra*, 189 Cal.App.4th at

12

p.1370.) Here, a reasonable factfinder could easily conclude Conroy's statement that "you risk not having your package delivered as [Zenteno] is a crook and not to be trusted" implies an assertion of fact, i.e., Zenteno steals customers' packages. Moreover, to the extent part of the post reflects Conroy's opinion that Zenteno has a "horrible demeanor" and HP is a "horrible business[,]" those opinions appear to be tied to the provably false assertion of fact that Zenteno steals customers' mail and packages. Indeed, Zenteno emphatically refutes this factual assertion in his declaration in support of his opposition to Conroy's anti-SLAPP motion: "I have never stolen a single package that was intended for one of our customers. I have never failed to deliver a package that was being sent to one of our customers." (See *Wilson v. Cable News Network, Inc., supra*, 7 Cal.5th at p. 891 [we accept "the plaintiff's evidence as true" in determining probability of success in the second stage of the anti-SLAPP analysis].)

The cases cited by Conroy compel no different result. For example, in *John Doe 2 v. Superior Court* (2016) 1 Cal.App.5th 1300, 1318, the court held emails were not actionable as libel because "the words 'whistle-blow' 'bad business practices' and 'burned' are too vague and amorphous to constitute an accusation of specific wrongdoing." The court explained: The "behavior one person regards as a 'bad business practice' may be acceptable to another person and conduct causing one person to feel 'burned' may not affect another person at all." (*Id.* at p. 1319.) There is nothing vague or amorphous about Conroy's statement that customers "risk not having [their] packages delivered as [Zenteno] is a crook and not to be trusted." Instead, the statement implies knowledge of specific conduct (Zenteno steals packages).

13

(See *Milkovich v. Lorain Journal Co.* (1990) 497 U.S. 1, 18-19 [110 S. Ct. 2695, 111 L.Ed.2d 1] ["[s]imply couching . . . statements in terms of opinion does not dispel [false and defamatory] implications" where the speaker implies "a knowledge of facts which lead to the [defamatory] conclusion"].)

Conroy's reliance on *Standing Committee on Discipline of the United States Dist. Court v. Yagman* (9th Cir. 1995) 55 F.3d 1430 (*Yagman*) is also misplaced. There, the court held an attorney could not be disciplined for calling a judge "dishonest" because the comment is protected by the First Amendment as an expression of opinion. (*Id.* at p. 1440.) The court explained: "The term 'dishonest' was one in a string of colorful adjectives [the attorney] used to convey the low esteem in which he held [the judge]. The other terms he used – 'ignorant,' 'ill-tempered,' 'buffoon,' 'sub-standard human,' 'right-wing fanatic,' 'a bully,' 'one of the worst judges in the United States' – all speak to competence and temperament rather than corruption; together they convey nothing more substantive than [the attorney's] contempt for [the judge]." (*Ibid.*)

*Yagman* is distinguishable for two reasons. First, it was not in the anti-SLAPP context, and thus, the "minimal merit" standard did not apply. (*Navellier v. Sletten*, *supra*, 29 Cal.4th at p. 89.) Second, unlike in *Yagman*, Conroy's statement that Zenteno cannot be trusted is tied to specific dishonest conduct capable of being proven false (i.e., that Zenteno steals customers' packages).

For these reasons, we conclude plaintiffs made the requisite minimal showing required under the second prong of the anti-SLAPP statute on the merits of their libel claim. The

14

trial court, therefore, properly denied Conroy's request to strike the first cause of action for libel.[5]

## D. Attorneys' Fees and Costs

In their respondents' brief on appeal, plaintiffs contend the trial court erred by awarding $25,000 in attorneys' fees and costs to Conroy. They argue Conroy was not the prevailing party on her anti-SLAPP motion because the court declined to strike causes of action one through four, and the fifth and sixth causes of action were stricken for reasons other than that they are subject to an anti-SLAPP motion.

Plaintiffs correctly note there is a split of authority regarding whether an order granting or denying attorneys' fees rendered *after* a ruling on an anti-SLAPP motion, as occurred here, is directly appealable. (Compare *Doe v. Luster* (2006) 145 Cal.App.4th 139, 145-150 [holding there is no statutory basis for an immediate appeal of a separate order awarding or denying fees under section 425.16, subdivision (c)] with *City of Colton v. Singletary* (2012) 206 Cal.App.4th 751, 781-782 [holding an order awarding or denying fees under section 425.16, subdivision (c) is directly appealable under the collateral order exception to the one

---

5    Conroy's only contention on appeal regarding the trial court's order declining to strike causes of action two through four is that those causes of action should have been stricken for the same reasons as the libel cause of action (i.e., the claims fail because Conroy's post is a statement of opinion, not fact). In the trial court, Conroy similarly only argued that causes of action two through four were derivative of the libel claim. Having concluded plaintiffs met their burden of demonstrating a probability of prevailing on the libel claim, we further conclude the trial court did not err by declining to strike causes of action two through four on that basis.

15

final judgment rule].) We need not resolve this conflict here, however. Plaintiffs did not file a cross-appeal from the order granting Conroy's motion for attorneys' fees and costs despite seeking reversal of that order. Thus, even assuming (without deciding) the attorneys' fee order is directly appealable, we lack jurisdiction to consider it because no appeal was taken from it. (See, e.g., *Faunce v. Cate* (2013) 222 Cal.App.4th 166, 170 ["We have no jurisdiction over an order not mentioned in the notice of appeal"].)

## DISPOSITION

The order granting in part and denying in part Conroy's special motion to strike the SAC is affirmed. Plaintiffs are awarded their costs on appeal.[6]


CURREY, Acting P. J.

We concur:


COLLINS, J.


MORI, J.

---

6      Plaintiffs seek sanctions against Conroy for filing a frivolous appeal. Sanctions for prosecuting a frivolous appeal should be used sparingly to deter only the most egregious conduct. (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650-651.) Although we conclude Conroy's appeal lacks merit, it does not constitute such egregious misconduct that sanctions are warranted.